IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN CROTTS, | ) | CASE NO. 1:06CV2519 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| MARGARET BRADSHAW, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is Steven Crotts' ("Crotts") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on October 18, 2006.  Crotts is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a conviction in the case of *State v. Crotts,* Case No. CR406396 (Cuyahoga County 2002).  For the reasons set forth below the magistrate judge recommends that the court deny Crotts' petition.

I

The January 2001 term of the Cuyahoga County, Ohio grand jury indicted Crotts on four counts of gross sexual imposition and one count of kidnaping with a sexual motivation specification.  The Ohio Supreme Court in reviewing Crotts' conviction described the following facts as relevant to his case:

{¶ 1} Steven Crotts was arrested on January 16, 1999, following a police investigation of an alleged sexual assault occurring at his home.  The victim, 12-year-old "J," alleged that he and his twin brother, "B," had shoveled snow at Crotts's residence on January 15.  After Crotts paid the boys for shoveling snow,

they attended an Awana church event with him. Following the event, they rented videos to watch at Crotts's home. The twins intended to spend the night there. After preparing dinner for the boys, Crotts fixed a plate for J, while B fixed his own plate. While the boys watched videos over dinner, Crotts also brought a glass of root beer into the living room for J to drink, while B poured his own. J and B reported that Crotts offered them a white pill, later determined to be melatonin, telling them it would help them sleep better and live longer. Both boys refused to ingest the pills, instead putting the pills in their pockets.

{¶ 2} B testified that J fell asleep unusually early that night. J recalled feeling woozy and falling asleep on the couch. He recalled being carried up the stairs at some point; he remembered seeing two white hands, Crotts's face, and a pair of glasses. J did not recall protesting. J believed that Crotts had somehow managed to slip him the white pill to make him drowsy.

{¶ 3} J woke up the next morning in Crotts's bedroom on top of Crotts. J was naked except for his socks. Crotts was also naked. J stated that when he awakened, he was facing the appellant in a "riding position" and felt his penis rubbing against Crotts's penis. He felt Crotts's hands on his buttocks, moving him up and down. J also noted that both his penis and Crotts's penis were erect and lubricated with oil. J yelled at Crotts to get off him and attempted to climb off the bed. Crotts smiled and said to him, "I know what you're doing," and grabbed J by the wrists. When J finally managed to get off the bed, he felt a wet substance in his pubic area. He put on his shorts and ran downstairs, where he awakened his twin brother, yelling, "Steve was trying to rape me-he was trying to do something to me." J called the police.

{¶ 4} The twins' older brother, 16-year-old P, worked for and resided with Crotts. P never paid rent to Crotts; while he was living there, Crotts took pictures of P and his friend in risqué poses that Crotts printed with the captions "C'mon 'n' Lick Me" and "Sisters for Life." P testified that he and a male friend returned to Crotts's home in the early morning hours of January 16, 1999, and saw his younger brother, B, sleeping on the couch alone. P and his friend went upstairs to go to sleep. They were awakened several hours later by sounds of a commotion in the house. Two officers came into his bedroom with their guns drawn. P heard J saying, "Not in there, in here," and heard the shower running. P remained in his room until after Crotts was taken to the police station. He and his friend later left the residence at the order of the police.

{¶ 5} J and B were taken to the police station, where they were interviewed. J was then taken to the hospital and a rape-kit examination was performed. The examining doctor, Cary Scott, noted the presence of an emollient on J's body, which may have been olive oil. Dr. Scott noted no signs of trauma or physical evidence of molestation on the victim; however, Dr. Scott also noted that a lack of findings was not uncommon if a lubricant had been used or there was no forced penetration.

2

{¶ 6} The Bureau of Criminal Identification and Investigation ("BCI") performed a chemical analysis of the white pill that B had turned over to police. Forensic scientist Jeffrey Houser determined that the white pill was melatonin, a dietary supplement. No tests were performed to determine whether melatonin had been ingested by J. The BCI report also contained the results of tests performed to find physical evidence on J's shorts. The report indicated the presence of sperm from J but found no evidence of sperm or DNA from Crotts.

{¶ 7} Crotts denied the allegations made against him. He asserted that he was awakened on the morning of January 16, 1999 by someone throwing shoes at him. He ignored it and tried to go back to sleep, but one of the twins-he couldn't tell which one-appeared at his bedside with a bottle of oil in his hand, poised to pour the oil on him. Crotts became angry and pushed the boy against the wall. The boy spilled the oil against the wall, further angering Crotts, and the boy ran out, still carrying the bottle. A few minutes later, one of the twins came into the room, tried to pull the sheet off Crotts, and again attempted to pour olive oil on him. Crotts grabbed the boy's arm, twisted it, and the boy fell to the ground. Crotts was naked at the time. He told the boy to give him the oil or he was going to "beat [him] like [his] father does." The boy ran downstairs, yelling that he was going to sue Crotts. Crotts stayed in bed a little longer and then got up and took a shower. The next thing he knew, he heard police telling him to get out of the shower.

{¶ 8} Crotts was convicted of one count of kidnapping with a sexual-motivation specification and two counts of gross sexual imposition,[1] with each of the latter two counts carrying a specification that the victim was under 13 years of age. Crotts was adjudicated to be a sexual predator.

*State v. Crotts*, 104 Ohio St. 3d 432, 432-34, 820 N.E.2d 302, 303-05 (2004).

On May 2, 2002 Crotts moved in the trial court for a new trial on the grounds that there was not sufficient evidence to sustain a guilty verdict. The court held a hearing on Crotts' motion and denied the motion on May 24, 2002. On May 29, 2002 the court sentenced Crotts to five years' imprisonment on each of the counts of sexual imposition, those terms to be served consecutively to each other, and to eight years' imprisonment on kidnaping, that term to be served consecutively to the other terms.

---

[1] Two counts of gross sexual imposition were severed from the other counts for trial at a later date. They were later dismissed.

3

Crotts, represented by new counsel, filed a timely notice of appeal of his conviction and sentence.  He raised seven assignments of error in his appellate brief:

First Assignment of Error
    The conviction of kidnapping is void in this instance as the deficient indictment and jury instruction allowed the appellant to be convicted with a non-unanimous verdict.

Second Assignment of Error
    The evidence is insufficient to support a finding of Kidnapping pursuant to R.C. §2905.01.

Third Assignment of Error
    The trial court erred by allowing prejudicial other acts evidence to be introduced to the jury.

Fourth Assignment of Error
    The trial court erred by allowing the alleged victim's brother testify as to his belief of the appellant's guilt.

Fifth Assignment of Error
    Trial counsel's failure to object to erroneous argument and jury instructions constituted ineffective assistance of counsel.

Sixth Assignment of Error
    The evidence is insufficient to find the appellant to be a sexual predator under R.C. §2950.09.

Seventh Assignment of Error
    The trial court erred by sentencing the appellant to a maximum consecutive sentence.

(Spelling and capitalization in the original).  On May 27, 2003 the state appellate court granted Crotts relief with respect to the third assignment of error and found that the error of admitting other acts evidence had not been harmless.  The court also denied Crotts relief with regard to his first, second, and fifth assignments of error and found all other assignments of error to be moot.  The appellate court remanded the case to the trial court for a new trial.

4

On May 19, 2004 Crotts moved in the trial court to vacate the judgment and sentence against him and for judicial notice of adjudicated facts.  The court found on June 3, 2004 that it had no jurisdiction to notice the requested facts and denied the motion to vacate.  Crotts moved on June 22, 2004 for the court to reconsider its decision, and the court denied this motion on August 2, 2004.

The State of Ohio timely filed in the Ohio Supreme Court a notice of appeal of the state appellate court's decision remanding Crotts' case for a new trial.  In its memorandum in support of jurisdiction the state asserted the following proposition of law:

> IT IS IMPROPER TO REVERSE A CONVICTION WHERE A TRIAL COURT PROPERLY ADMITS OTHER ACTS EVIDENCE UNDER EVID.R. 404(B) AS PROOF OF DEFENDANT'S INTENT AND PLAN AND WHERE DEFENDANT CAUSES THE EVIDENCE TO BE ADMITTED BY OPENING THE DOOR.

In response, Crotts filed a memorandum asserting seven propositions of law:

> Proposition of Law I:
>
> Allegations of similar activities of a criminal defendant are not admissible under Evid. R. 404(B) where the identification is not an issue and the offense is not inextricably related to the offense.
>
> Proposition of Law II:
>
> A jury verdict of guilty must be based upon a unanimous finding of proof beyond a reasonable doubt as to each element of the charged offense.  Where the jury is encouraged to find either one of two distinct acts as the basis for the particular element, a subsequent conviction is invalid.
>
> Proposition of Law III:
>
> The restraint of liberty element must be found to have occurred concurrently with the additional elements of kidnapping in order to sustain a conviction.
>
> Proposition of Law IV:
>
> A witness [sic] opinion as to the guilt of a defendant is inherently irrelevant.

5

Proposition of Law V:

Trial counsel's failure to object to erroneous argument and jury instructions constitutes ineffective assistance of counsel where the failure results in the waiver of meritorious issues.

Proposition of Law VI:

A defendant convicted of a sex offense may only be classified as a sexual predator if the evidence of this classification is established by clear and convincing evidence.

Proposition of Law IV [sic]:

Mere recitation of the statutory language will not justify a maximum or consecutive sentence where the findings are not supported by clear and convincing evidence.

(Spelling in the original).  Crotts did not file a notice of appeal or cross-appeal in accordance with Ohio Sup. Ct. Prac R. II, §2(A)(2)(a) before raising these claims in the Ohio Supreme Court.  The Ohio Supreme Court accepted jurisdiction as to the state's appeal and denied Crotts' cross-appeal without explanation on October 8, 2003.

On January 6, 2004 Crotts moved in the Ohio Supreme Court to allow his counsel to withdraw from the case because he had failed timely to file a merit brief.  The court granted Crotts' motion and remanded the case to the state appellate court for the appointment of new counsel with instructions to allow new counsel to brief the case.  The state appellate court appointed new counsel and, shortly thereafter, that counsel was replaced by a third appellate counsel, who filed a merit brief on June 7, 2004.

On December 15, 2004 the Ohio Supreme Court reversed the decision of the state appellate court and remanded the case for consideration of the assignments of error the appellate court had previously found moot.  Crotts moved for reconsideration of the court's decision on December 27, 2004.  On February 16, 2005 the court denied Crotts' motion.

Crott petitioned the United States Supreme Court for a writ of certiorari on May 16,

6

2005.  The Supreme Court denied the petition on July 5, 2005.

Prior to the state appellate court's reaching a decision on remand from the Ohio Supreme Court, Crotts attempted to file a supplementary brief to argue additional assignments of error in the appellate court.  Among these assignments of error was a claim that his sentence violated the holding in *Blakely v. Washington*, 542 U.S. 296 (2004).  The court rejected this brief as beyond the scope of the Ohio Supreme Court's remand to the appellate court.

On July 26, 2005 the state appellate court journalized a decision[2] finding Crotts' fourth, sixth, and seventh assignments of error to be without merit.  Crotts applied on July 11, 2005 for reconsideration of the court's decision.  The court denied Crotts' application on July 26, 2005.

Crotts filed a timely notice of appeal in the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Crotts asserted five assignments of error:

**PROPOSITION OF LAW NO. I**
A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN A COURT IN SENTENCING A FIRST OFFENDER IMPOSES MAXIMUM CONSECUTIVE SENTENCES WHERE THE RECORD REFLECTS THAT THE COURT GIVES NO CONSIDERATION TO THE STATUTORY FACTORS CONCERNING WHETHER OR NOT THE OFFENSE IS GREATER OR LESSER THAN CONDUCT NORMALLY CONSTITUTING THE OFFENSE.

**PROPOSITION OF LAW NO. II**
A DEFENDANT IS SUBJECTED TO UNCONSTITUTIONAL MULTIPLE PUNISHMENTS WHEN THE COURT FAILS TO MERGE A KIDNAPPING COUNT WITH THE COUNTS OF GROSS SEXUAL IMPOSITION.

**PROPOSITION OF LAW NO. III**
A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN A COURT ALLOWS A WITNESS TO GIVE AN OPINION AS TO THE CREDIBILITY OF ANOTHER

---

[2] The court reached its decision June 30, 2005.

WITNESS.

**PROPOSITION OF LAW NO. IV**
A DEFENDANT IS DENIED HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS WHEN HIS SENTENCE IS BASED ON FACTS FOUND BY THE COURT WHICH WERE NOT ALLEGED IN THE INDICTMENT NOR FOUND BY THE JURY.

**PROPOSITION OF LAW NO. V**
A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN A COURT FAILS TO DISMISS AN INDICTMENT WHEN A DEFENDANT'S RIGHT TO A SPEEDY TRIAL HAS BEEN VIOLATED.

(Spelling in the original).  On December 14, 2005 the Ohio Supreme Court denied Crotts leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

On September 23, 2005 Crotts applied pursuant to Ohio App. R. 26(B) ("R. 26(B)") to reopen his direct appeal, alleging ineffective assistance of appellate counsel.  Crotts argued that appellate counsel had been ineffective for failing to argue the following:

I
THE DEFENDANT WAS UNCONSTITUTIONALLY SENTENCED TO MULTIPLE PUNISHMENTS WHEN THE COURT FAILED TO MERGE THE GROSS SEXUAL IMPOSITION AND KIDNAPPING CONVICTIONS.

II
DEFENDANT WAS DENIED HIS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENT [sic] WHEN THE SENTENCE WAS BASED ON CLAIMS NOT ALLEGED IN THE INDICTMENT NOR FOUND BY THE JURY.

III
DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TO DISMISS THE INDICTMENT WHEN THE DEFENDANT'S RIGHT TO A SPEEDY TRIAL HAD BEEN VIOLATED.

IV
DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED OF GROSS SEXUAL IMPOSITION WITHOUT REQUIRING ANY PROOF OF A CULPABLE MENTAL STATE.

8

V
DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS TESTIMONY
WAS TO BE JUDGED DIFFERENTLY THAN OTHER WITNESSES.

(Spelling in the original).  On March 6, 2006 the state appellate court found that Crotts' first,

second, and third grounds for relief were barred by *res judicata.*  The court also found that

grounds four and five were without merit and that Crotts had not been prejudiced by

counsel's failure to raise these claims on appeal.  The state appellate court, therefore,

denied Crotts' application.

Crotts filed in the Ohio Supreme Court a timely appeal of the denial of his application

for reconsideration.   In his memorandum in support of jurisdiction, Crotts asserted six

propositions of law:

**PROPOSITION OF LAW NO. I**
A DEFENDANT IS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
GUARANTEED BY THE SIXTH AMENDMENT WHERE COUNSEL FAILS TO
PRESENT CLAIMS OF ERROR WHICH ARE APPARENT ON THE FACT [sic] OF
THE RECORD.

**PROPOSITION OF LAW NO. II**
A DEFENDANT HS [sic] BEEN UNCONSTITUTIONALLY AND MULTIPLY
SENTENCED WHERE A COURT FAILS TO MERGE A CONVICTION FOR GROSS
SEXUAL IMPOSITION AND KIDNAPPING[.]

**PROPOSITION OF LAW NO. III**
A DEFENDANT HAS BEEN DENIED HIS RIGHTS UNDER THE SIXTH AND
FOURTEENTH AMENDMENTS WHERE HE HAS BEEN SENTENCED BASE [sic]
ON CLAIMS NOT ALLEGED IN THE INDICTMENT NOR FOUND BY THE JURY.

**PROPOSITION OF LAW NO. IV**
A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN A COURT FAILS TO
DISMISS AN INDICTMENT WHERE A DEFENDANT'S RIGHTS TO A SPEEDY
TRIAL HAS [sic]

**PROPOSITION OF LAW NO. V**
A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN HE IS CONVICTED
OF GROSS SEXUAL IMPOSITION WITHOUT REQUIRING AN ALLEGATION OR

9

PROOF OF A CULPABLE MENTAL STATE.

**PROPOSITION OF LAW NO. VI**
A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN HIS TESTIMONY
WAS TO BE JUDGED DIFFERENTLY THAN OTHER WITNESSES.

(Spelling in the original).  On June 7, 2006 the Ohio Supreme Court dismissed Crotts'

appeal as not involving any substantial constitutional question.

On October 18, 2006 Crotts filed in this court a petition for a writ of habeas corpus.

Crotts asserts eleven grounds for relief in his petition:

A.    Ground one:       FIRST AND FOURTEENTH AMENDMENT

Supporting facts:  Petitioner was convicted of criminal offenses in the Court
of Common Pleas of Cuyahoga County based upon the exercise of his
constitutional right of religion, association and speech.  The prosecutor
attempted to associate the church to which petitioner belonged as being a
haven or advocate for homosexuality which it was not.  Based on this
inflammatory evidence petitioner was convicted and the court's [sic] in
upholding petitioner's convictions likewise perpetuated miscarriage of justice.

B.    Ground two:       SIX[TH] AND FOURTEENTH AMENDMENT

Supporting facts:  Petitioner was charged on alternative theories involving
kidnapping.  However the jury instructions did not require a unanimous jury
verdict as to which version of kidnapping petitioner could be convicted of.
Moreover, with respect to the offense of gross sexual imposition no
unanimous jury was required when it was needed in order to convict.

C.    Ground three:     FOURTEENTH AMENDMENT

Supporting facts:  Petitioner was convicted when the court allowed other
prejudicial evidence concerning other alleged acts to be introduced to the
jury.  Moreover, the court allowed a brother of the alleged victim to testify as
to his belief in petitioner's guilt.

D.    Ground four:      SIXTH AMENDMENT

Supporting facts:  Petitioner was deprived of effective assistance of counsel
when trial counsel failed to object to improper argument to the jury and jury
instructions.

E.   Ground five:          FOURTEENTH AMENDMENT

Supporting facts:  Petitioner was denied due process of law when there was insufficient evidence presented that petitioner was a sexual predator under Ohio Revised Code §2950.09.

F.   Ground six:          SIXTH AND FOURTEENTH AMENDMENT

Supporting facts:  Petitioner was denied his constitutional right to a trial by jury when the trial court sentenced petitioner to thirteen (13) years of imprisonment based upon findings made the court's [sic] and not by the jury in which factors [sic] were not alleged in the indictment.

G.   Ground seven:          SIXTH AMENDMENT

Supporting facts:  Petitioner was denied effective assistance of appellate counsel when appellate counsel failed to present claims of error which were apparent on the face of the trial record.

H.   Ground eight:          SIXTH AND FOURTEENTH AMENDMENT

Supporting facts:  Petitioner was unconstitutionally and multiply sentenced where the trial court failed to merge a conviction for gross sexual imposition and kidnapping.

I.   Ground nine:          FOURTEENTH AMENDMENT

Supporting facts:  Petitioner was denied due process of law when the trial court failed to dismiss petitioner's indictment where petitioner had been denied a speedy trial as required by law.

J.   Ground ten:          FOURTEENTH AMENDMENT

Supporting facts:  Petitioner was denied due process of law when the trial court permitted petitioner to be convicted of gross sexual imposition without requiring an allegation or proof of a culpable mental state.

K.   Ground eleven:          FOURTEENTH AMENDMENT

Supporting facts:  Petitioner was denied due process of law when his testimony was to be judge [sic] differently by the jury then [sic] other witnesses at his trial.

(Spelling in the original).  Respondent filed an Answer/Return of Writ on January 29, 2007

11

(Docket #7).  Crotts filed a Traverse on March 23, 2007 (Docket #10).  Thus, the petition is ready for decision.

II

A.    *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).  Title 28 U.S.C. § 2254(a) provides in relevant part, "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Crotts was convicted and sentenced in Cuyahoga County, Ohio.  This court has jurisdiction over his claims.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All Crotts' claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  Federal courts lack jurisdiction to consider any claim that was not fairly presented to the state courts.  *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168, 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Fair presentment of a claim in a federal constitutional context requires a petitioner to apprise the state courts that a claim is a federal claim, "not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner need not cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278, to apprise state courts that his claim is based on federal law:

In determining whether a petitioner has fairly presented a federal constitutional claim

13

to the state courts, a habeas court may consider whether (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law.

*Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *see also Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 193-94 (2d Cir. 1982)).

Because Crotts has no remaining state remedies available, his claims have been exhausted.

D.    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state

14

procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent contends that Crotts has procedurally defaulted his first, fifth, sixth, seventh, eighth. ninth, and eleventh grounds for relief.

### 1.     Procedural default and Crotts' first ground for relief

In his first ground for relief, Crotts contends that he was convicted based upon the exercise of his First Amendment rights of religion, association, and speech.  Crotts never presented this claim to any state court.

Crotts argues that this claim was presented to the state courts because the Ohio Supreme Court upheld the use of evidence alleging that Crotts attended an "all gay" church and that another church was "gay friendly."  Crotts errs.  The decision to admit this evidence was reached solely upon consideration of Ohio's evidentiary rules.  Crotts did not argue in any state court that the use of such evidence violated his First Amendment rights. Having failed to present this claim to the state courts as a federal constitutional question, Crotts has procedurally defaulted this claim.

Crotts does not present cause and prejudice for his default or demonstrate that failure to grant him relief would result in a fundamental miscarriage of justice.  For these

15

reasons, the magistrate judge recommends that the court dismiss Crotts' first ground for relief.

### 2. Procedural default and Crotts' fifth ground for relief

In his fifth ground for relief, Crotts argues that he was denied due process of law because there was insufficient evidence to support the determination that he was a sexual predator under Ohio Revised Code §2950.09.  Respondent asserts that Crotts has procedurally defaulted this ground for relief because he failed to file a notice of cross-appeal in accordance with Ohio Sup. Ct. Prac. R. II, §2(A)(2)(a) before raising this claim in the Ohio Supreme Court.

Ohio Sup. Ct. Prac. R. II, §2(A)(2)(a) mandates that when a party has already filed a notice of appeal to the Ohio Supreme Court, any other party in the case wishing to raise claims in that court must perfect an appeal by filing a notice of appeal or cross-appeal with the court.  Respondent alleges, and Crotts does not deny, that Crotts failed to file a notice of appeal or cross-appeal after the state filed a notice of appeal of the appellate court's partial judgment in favor of Crotts.  Failure to perfect an appeal by filing a timely notice of appeal in the Ohio Supreme Court is a failure to establish the court's jurisdiction over the appellant's claims.  See, e.g., Abramovich v. Abramovich, 86 Ohio St. 3d 1456, 715 N.E.2d 188 (table) (Aug. 20, 1999); Gumpl v. Records Office, 77 Ohio St. 3d 1439, 671 N.E.2d 1279 (table) (Nov. 15, 1996).  Consequently, the Ohio Supreme Court never had jurisdiction over the claims Crotts raised on cross appeal.  Crotts' claim that there was not sufficient evidence to support the determination that he was a sexual predator was raised in the state courts only in his memorandum in support of jurisdiction on cross-appeal. Crotts has not, therefore, properly presented this claim to the highest court in the state.

16

Crotts argues that he has properly presented this claim to the Ohio Supreme Court because he raised the claim in his merit brief in support of his cross-claims and the Ohio Supreme Court dismissed his cross-claims.  This argument is not well-taken.  The Ohio Supreme Court dismissed Crotts' cross-appeal without opinion.  Where the state courts are silent as to the reasons for denying a petitioner's claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).  This court must assume, therefore, that the Ohio Supreme Court dismissed Crotts' cross-appeal for failure to file a notice of cross-appeal.  Thus, Crotts has not fairly presented this claim to the highest court in Ohio.  Crotts has procedurally defaulted his fifth ground for relief.

Crotts does not show cause and prejudice for this default or demonstrate that failing to grant him relief will result in a fundamental miscarriage of justice.  For these reasons, the magistrate judge recommends that the court dismiss Crotts' fifth ground for relief.

     *3.    Procedural default and Crotts' sixth ground for relief*

In his sixth ground for relief, Crotts claims that he was denied his right to a trial by jury when the trial court sentenced him to thirteen years' imprisonment based upon findings made by the court using factors not alleged in the indictment.  Respondent argues that Crotts has defaulted this ground for relief because he raised it for the first time in the Ohio Supreme Court after remand to the state appellate court and because Crotts did not present the case on which he based his claim, *Blakely*, to the state appellate court prior to raising the claim in the Ohio Supreme Court.  Because Crotts failed properly to raise this claim in his direct appeal, respondent argues, Crotts has defaulted this claim.

17

*Blakely* clarified a rule first stated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Apprendi* held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301. *Blakely* defined *Apprendi's* "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 303 (emphasis in original). The statutory maximum is not the maximum sentence allowed by statute after the judge finds additional facts but the maximum the judge may impose without any additional factual findings. *Id.* at 303-04.

Crotts filed his direct appeal in June 2002, and the state appellate court reached a decision in Crotts' appeal on May 27, 2003. In June 2003 the state appealed the state appellate court's decision in favor of Crotts to the Ohio Supreme Court. In his response to the state's merit brief, Crotts filed an "Appellee/Cross-Appellant's Memorandum in Response" on July 18, 2003. Crotts' third appellate counsel filed in the Ohio Supreme Court a merit brief in response to the state's asserted proposition of law on June 7, 2004. The Ohio Supreme Court reversed the decision of the state appellate court on December 15, 2004. Crotts moved on December 27, 2004 for reconsideration of the court's decision.

The Supreme Court decided *Blakely* on June 24, 2004. Crotts was unable properly to argue that his sentencing violated the holding in *Blakely* during his first appearance in the state appellate court because *Blakely* was not decided until after the state appellate court reached its decision. Crotts attempted to raise this claim in the state appellate court when the Ohio Supreme Court remanded his case to the appellate court, but the appellate

18

court rejected consideration of this claim as beyond the court's jurisdiction.[3]

Crotts first raised his *Blakely* claim in the state courts in his appeal of the appellate court's denial of relief after remand from the Ohio Supreme Court.  The Ohio Supreme Court denied Crotts leave to appeal and dismissed his appeal as not involving any substantial constitutional question.  This is a formulary dismissal that does not indicate that the court examined the merits of the dismissed claim.  *See infra*, p. 20.  Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *State v. Jester*, 32 Ohio St. 3d. 147, 154, 512 N.E. 2d 962, 966 (1987).  It is unlikely that the Ohio Supreme Court would reach the merits of claims that were not raised in the underlying appellate proceeding.  This court must assume that the Ohio Supreme Court's silence as to the reasons for denying Crotts' due process claim is that the court enforced its procedural bar against considering claims not previously raised in the state appellate court.  *Simpson*, 94 F.3d at 203.  This court presumes, therefore, that the Ohio Supreme Court dismissed Crotts' *Blakely* claim because he failed to raise this claim in the state appellate court prior to raising it in the Ohio

---

[3]  Even though the parties were unable to brief the merits of this claim on remand, the state appellate court included the following in a footnote in its decision denying Crotts relief:

> While not argued by either party in this appeal, it should be noted that this court has found R.C. 2929.14(E)(4), the statute that addresses consecutive sentences, to be constitutional and not in violation of the Sixth Amendment as construed in *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. See *State v. Lett* (May 31, 2005), Cuyahoga App. Nos. 84707 and 84729.

A later ruling of the Ohio Supreme Court held that Ohio Rev. Code § 2929.14(E)(4) was unconstitutional in part due to the holding in *Blakely*.  *See State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).

Supreme Court.

Crotts subsequently raised his *Blakely* claim in the state appellate court in his application to reopen pursuant to R. 26(B). The state appellate court found that Crotts' claim regarding his sentencing was *res judicata* because he had previously raised the claim in the Ohio Supreme Court. Crotts raised this claim again in the Ohio Supreme Court in his appeal of the appellate court's denial of his application to reopen. The Ohio Supreme Court dismissed his appeal as not involving any substantial constitutional question.

The Ohio Supreme Court's dismissal of an appeal as not involving any substantial constitutional question is a formulary dismissal and is not an indication that the court reviewed the merits of the question presented. As the Sixth Circuit has found:

> [M]any formulary orders are not meant to convey *anything* as to the reason for the decision. Attributing a reason is therefore both difficult and artificial. We think that the attribution necessary for federal habeas purposes can be facilitated, and sound results more often assured, by applying the following presumption: Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman,* 501 U.S., at 740, 111 S.Ct., at 2559, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

*Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

In the instant case, because Crotts' appeal to the Ohio Supreme Court was dismissed with the formulary entry, in accordance with *Ylst*, this court looks through that dismissal to the last reasoned opinion on the subject by the state appellate court. That court dismissed Crott's claim as *res judicata*. This court must presume, therefore, that the Ohio Supreme Court dismissed Crotts' claim on procedural grounds rather than on the

20

merits of the case.  Consequently, Crotts did not fairly present this claim to the highest court in the state.  He has procedurally defaulted the claim.

The Ohio rules requiring appellants to raise claims timely in the appellate court before they can be considered by the Ohio Supreme Court advance the state's interest in the regularity of criminal convictions and do not implicate federal law.  *See, e.g., Normand v. McAninch*, 2000 WL 377348, *5 (6th Cir. April 6, 2000).  Crott does not argue that Ohio courts do not regularly follow this rule.  Thus, the rule that appellants must raise claims timely in the appellate court before they can be considered by the Ohio Supreme Court is an adequate and independent ground upon which Ohio can rely to foreclose habeas review.

Crotts argues that the state appellate court erred in holding that Crotts' *Blakely* claim was barred by *res judicata*.  According to Crotts, when he first raised the claim in the Ohio Supreme Court, he had not previously raised it in the state appellate court.  Consequently, the Ohio Supreme Court's dismissal of the claim was for procedural reasons and was not a ruling on the merits of the claim.  For this reason, Crotts concludes, the matter was not properly *res judicata*.

There are four problems with Crotts' argument.  First, that Crotts improperly raised his *Blakely* claim in the Ohio Supreme Court may not prevent the operation of *res judicata* in later proceedings.  The Ohio rule is that "*res judicata* bars the further litigation of issues that *were raised* or could have been raised on direct appeal."  *State v. Dehler*, 73 Ohio St. 3d 307, 307, 652 N.E.2d 987, 987 (1995) (emphasis added).  The rule does not specifically require that an issue be *properly* raised before *res judicata* may operate.  Second, the Ohio Supreme Court's dismissal of Crotts' appeal of the state appellate court's refusal to

21

consider his *Blakely* claim because the issue was *res judicata*, thus affirming the appellate court's reasoning, *see Ylst*,  501 U.S. at 801, seems to indicate that the Ohio Supreme Court agrees that a claim need not be properly raised for *res judicata* to operate.  Third, the proper arbiter of Ohio law is the Ohio Supreme Court.  Unless Crotts shows that another opinion of the Ohio Supreme Court squarely contradicts the court's apparent opinion in affirming the appellate court's dismissal of Crotts' *Blakely* claim, this court must assume that Ohio law does not require that an issue be properly raised before *res judicata* may operate.  Fourth, Crotts does not demonstrate that allowing *res judicata* to bar further litigation of claims that were improperly raised violates due process or some other federal constitutional guarantee.  Absent such a showing, a federal court may not overturn state law.

Crotts does not show cause and prejudice for his procedural default.  Rather, Crotts argues that he presented this claim in all state fora in which it could have been presented.  However, Crotts should have raised this claim in a motion to reopen in the state appellate court *prior to* attempting to raise the claim in the Ohio Supreme Court.  Crotts also could have raised this claim in the trial court pursuant to a motion for postconviction relief immediately after the Supreme Court delivered its decision in *Blakely*.  Crotts then could have, if necessary, appealed that decision to the state appellate court and to the Ohio Supreme Court.  Either method of presenting his claim would have avoided *res judicata*.

Crotts does not demonstrate actual innocence or demonstrate that excusing the default will result in a fundamental miscarriage of justice.  Crotts does not, therefore, provide any reason why the court should excuse his procedural default.  For these reasons, the magistrate judge recommends that the court overrule Crotts' sixth ground for relief.

22

*4.        Procedural default and Crotts' seventh ground for relief*

In his seventh ground for relief, Crotts contends that he was denied effective assistance of appellate counsel when appellate counsel failed to present obvious and meritorious assignments of error.   Respondent argues that Crotts has procedurally defaulted this claim because he failed to raise it as an independent claim in his application to reopen pursuant to R. 26(B) and because some of the grounds on which his allegation of ineffective assistance of counsel was based were barred by *res judicata.*

In his application to reopen pursuant to R. 26(B), Crotts asserted in relevant part the following:

> Now comes defendant-appellant, Steven Crotts, pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure and moves that the court reopen his appeal. Defendant states that he was denied effective assistance of counsel on appeal. . . . The doctrine of ***res judicata*** does not bar these claims. . . .
> In order to prevail on a claim of ineffective assistance of appellate counsel it must be shown that appellate counsel failed to raise issues that could have been raised.  It must also be shown that the failure of appellate counsel **"to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal."**  ***McFarland v. Yukins***, 356 F.3d 688, 699 (6th Cir. 2004).  ***Joshua v. DeWitt***, 341 F.3d 430 (6th Cir. 2003).
> Consequently, in order to prevail on a claim of ineffective assistance of counsel it must be shown that there is some merit in the underlying claims which should have been raised.  This would have shown that counsel was deficient and there was a reasonable probability the result of the proceeding would have been different.  ***Strickland v. Washington***, 466 U.S. 668, 690, 694 (1984).

Application for Reopening of Appeal ("Application"), Answer, Exh. 42, pp. 1-2 (emphasis in the original; spacing altered from the original).  Crotts then enumerated and argued each of the claims that demonstrated appellate counsel's alleged ineffectiveness.   His assignments of error included claims that (1) he was unconstitutionally sentenced to multiple punishments when the court failed to merge the convictions for gross sexual

23

imposition and kidnaping; (2) he was denied his rights under the Fifth and Fourteenth Amendments when the court sentenced him based on facts not alleged in the indictment or found by the jury; (3) he was denied due process of law when the court failed to dismiss the indictment after his right to a speedy trial had been violated; (4) he was denied due process of law when he was convicted of gross sexual imposition without requiring any proof of a culpable mental state; and (5) he was denied due process when his testimony was judged differently than the testimony of other witnesses.

The state appellate court's decision in response to Crotts' application found that Crotts had procedurally defaulted his first three assignments of error because he had previously raised them in the Ohio Supreme Court.  The court then found that "[b]ased on the fourth and fifth assignments of error, Crotts has failed to establish ineffective assistance of appellate counsel."  Journal Entry and Opinion, *State v. Crotts*, Case no. 81477 (8th Dist. App. Mar. 6, 2006), Answer, Exh. 44, p. 5.

Respondent's argument that Crotts failed to raise ineffective assistance of counsel as an independent claim is not well taken.  Crotts made it abundantly clear that he was arguing *both* that appellate counsel had been ineffective *and* that counsel had failed to argue meritorious claims.  The appellate court's decision also shows that it understood that Crotts was claiming ineffective assistance of appellate counsel with respect to each of Crotts' assignments of error, and it reached the merits of these claims.

Respondent is correct, however, in arguing that Crotts has procedurally defaulted any claims alleging that Crotts was unconstitutionally sentenced to multiple punishments for gross sexual imposition and kidnaping, that his rights protected by the Fifth and Fourteenth Amendments were violated when the court sentenced him based on facts not

24

alleged in the indictment or found by the jury, and that he was denied due process for failure to give him a speedy trial.  The state appellate court found that these claims were barred by *res judicata* and, therefore, were procedurally defaulted.  The state appellate court also refused to consider Crotts' claim of ineffective assistance of appellate counsel based on a failure to raise these defaulted claims because the previous adjudication prevented it from considering whether the underlying claims on which the alleged ineffective assistance was predicated were meritorious.

Crotts does not argue that Ohio's rule that *res judicata* prevents claims raised in a previous proceeding from being relitigated is not an adequate and independent ground on which Ohio can rely to foreclose habeas relief.  He also does not demonstrate cause and prejudice for his default or demonstrate that a fundamental miscarriage of justice would result if he is not granted relief.  For these reasons, the magistrate judge recommends that the court dismiss Crotts seventh claim for relief, ineffective assistance of appellate counsel, as it pertains to his claims that counsel was ineffective for failing to argue that Crotts was unconstitutionally sentenced to multiple punishments for gross sexual imposition and kidnaping, was denied his rights under the Fifth and Fourteenth Amendments for sentences based on facts not alleged in the indictment or found by the jury, and was denied due process because the court did not give him a speedy trial.

    5.    *Procedural default and Crotts' eighth and ninth grounds for relief*

In his eighth and ninth grounds for relief, Crotts argues that he was unconstitutionally and multiply sentenced when the trial court failed to merge his conviction for gross sexual imposition with his conviction for kidnaping and that he was denied a speedy trial. Respondent argues that Crotts has procedurally defaulted these claims because they were

25

not presented to the state appellate court before presenting them to the Ohio Supreme Court.

Crotts first raised these claims for relief in the Ohio Supreme Court on appeal from the state appellate court's decision on remand.  He did not raise these claims in his direct appeal to the state appellate court.  As already noted, under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *Jester*, 32 Ohio St. 3d. at 154, 512 N.E. 2d at 966.  It is unlikely that the Ohio Supreme Court would reach the merits of claims that were not raised in the underlying appellate proceeding.  This court must assume that the Ohio Supreme Court did not "ignore[] its own procedural rules and . . . enforced the procedural bar." *Simpson*, 94 F.3d at 203,  For this reason, this court assumes that the Ohio Supreme Court refused to review these claims for procedural reasons.  Thus, Crotts has not fairly presented these claims to the Ohio Supreme Court, and they are procedurally defaulted.

Crotts does not show cause and prejudice for these procedural defaults or show that failure to grant him relief will result in a fundamental miscarriage of justice.  For these reasons, the magistrate judge recommends that the court dismiss Crotts' eighth and ninth grounds for relief.


*6.    Procedural default and Crotts' eleventh ground for relief*

In his eleventh ground for relief, Crotts contends that he was denied due process of law when the court required that the jury judge his testimony differently than the testimony of other witnesses.  Respondent argues that Crotts has procedurally defaulted this claim because he failed to present it to the state courts as a federal question.

26

In his application to reopen pursuant to R. 26(B) and in his appeal from the denial of that application, Crotts asserted the following claim: "Defendant was denied due process of law when his testimony was to be judged differently than other witnesses."  Crotts did not cite any federal court case, rely on any case basing its decision on the federal constitutional guarantee of due process, or explain in how the jury instruction to which he was objecting[4] offended due process.

Fair presentment of a claim in a federal constitutional context requires a petitioner to apprise the state courts that a claim is a federal claim, "not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner need not cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278, to apprise state courts that his claim is based on federal law.  A petitioner fairly presents a federal claim to state courts by relying on relevant federal cases employing the constitutional analysis upon which petitioner relies, by relying on state cases employing a federal constitutional analysis in fact situations similar to his own, or by asserting the claim in terms so particular as to raise the specific right protected by the Constitution.  *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 193-94 (2d Cir. 1982)).  A petitioner does not fairly present a federal claim to a state court merely by presenting the facts underlying his claim for relief, *Picard,* 404 U.S. at 277, nor by making a general reference to a broad constitutional guarantee, such as due process, *Gray v. J.D. Nederland*, 518 U.S. 152, 163 (1996).  The petitioner must present argument or

---

[4]  Crotts objected to the instruction that the jury was to give his testimony **"the weight it's entitled to receive, *taking into consideration his interest in the outcome of the case* . . . ."**  Application at 12 (quoting Tr. at 678) (emphasis in the original).

citations to cases which identify the substance of the particular analysis upon which petitioner relies in asserting his federal constitutional claim. *Gray*, 518 U.S. at 162-63.

In the instant case Crotts failed to present his claim to the state courts as a federal claim by relying on relevant federal cases employing a constitutional analysis, by relying on state cases employing a federal constitutional analysis in fact situations similar to his own, or by asserting the claim with sufficient particularity. He has, therefore, procedurally defaulted this ground for relief. Crotts does not demonstrate cause and prejudice for his default or demonstrate that failure to grant relief will result in a fundamental miscarriage of justice. For these reasons, the magistrate judge recommends that the court dismiss Crotts' eleventh ground for relief.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000); *Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001). Law is

28

"clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.*  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.*  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

 "[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  The magistrate judge will consider

29

Crotts' remaining claims under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.      *Ground two:  The jury instructions with respect to Crotts' convictions for kidnaping and gross sexual imposition improperly failed to require a unanimous verdict*

Crotts contends in his second ground for relief that he was denied due process when the court gave the jurors instructions that (1) charged him under alternate theories of kidnaping which allowed the jury to find him guilty without reaching unanimity as to a single theory of the crime and (2) did not require a unanimous verdict to convict him of gross sexual imposition.  Respondent argues that neither claim is meritorious.

A federal habeas petitioner alleging error in a jury instruction must establish not only that the instruction was undesirable or erroneous, "but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten,* 414 U.S. 141, 146 (1973).  Petitioners alleging instructions that violate due process must show that the instructions "are so fundamentally unfair as to deprive petitioner of a fair trial and . . . due process of law." *Long v. Smith,* 663 F.2d 18, 23 (6th Cir. 1981).  Moreover,

> "In reviewing the effect of jury instructions on the resulting conviction, a single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge."  *Cupp*[, 414 U.S. at 146-47].  Thus, the issue on review is whether the instruction as a whole "so infected the entire trial that the resulting conviction violates due process."  *Id.* at 147.  The burden of establishing that an erroneous jury instruction's prejudicial effect warrants a "collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on appeal."  *Henderson v. Kibbe,* 431 U.S. 145, 154 (1971).  It is not enough to merely show that the instruction was incorrect. *Id.*

*Allen v. Redman*, 858 F.2d 1194, 1200 (6th Cir. 1988).  "An ambiguous, potentially erroneous instruction violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly."  *Coe v. Bell,* 161 F.3d 320, 329 (6th Cir.

1998).

Crotts raised in his direct appeal his claim that he was denied due process because he was charged under alternative theories of kidnaping theories, thus allowing a non-unanimous verdict.  The state appellate court reviewing this claim made the following relevant findings of fact and conclusions of law:

> {¶ 8} Crotts claims the kidnapping conviction cannot stand because the State argued alternatively that the kidnapping occurred: (a) when he carried the victim upstairs; or (b) when he grabbed the victim's wrist to prevent him from escaping.  He argues that the jury should have been required to reach a unanimous verdict upon the facts that constituted the kidnapping, and the verdict is not unanimous because there is a chance that some jurors found him guilty for carrying the child upstairs while others found him guilty for grabbing his wrist.
>
> {¶ 9} While a jury must reach a unanimous verdict upon each element that makes up a crime, it "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element[.]"[FN6]  Where an element can be accomplished by alternative means, the jurors need not agree on which means the defendant used so long as they agree that the element is satisfied.[FN7]  Crotts was charged with kidnapping under R.C. 2905.01(A)(4), which states:
>
> FN6. *Richardson v. United States* (1999), 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (citations omitted).
>
> FN7. *Id.* at 817-818.
>
> {¶ 10} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> {¶ 11} " * * *
>
> {¶ 12} "(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]"
>
> {¶ 13} Pursuant to *Richardson,* we must construe the statute to determine whether the jury chose between alternative means of completing the same element or between separate elements.  The first element of kidnapping expressly appears to state a number of means to complete the same offense, as the defendant can use

31

force, threat, deception or, in the case of a victim under age thirteen, "any means" to remove or restrain the victim.  The second set of alternatives is at issue here, however, as the jury was allowed to convict either on evidence that Crotts "removed" the victim when he carried him upstairs or on evidence that he "restrained" the victim when he grabbed him by the wrist.  We must determine whether these alternatives constitute different means of committing the same offense or are elements of separate offenses.

{¶ 14} Although the Supreme Court's decisions in *Richardson* and *Schad v. Arizona*[FN8] indicate some continuing controversy in this area, we believe the determination between "means" and "elements" should be at least consistent with the methods of determining whether two offenses are included or allied for purposes of the charge or punishment.  These determinations each require analysis of abstract elements [FN9] to decide whether an offense is included in the charging instrument or whether the legislature authorized multiple punishments for two offenses that arise from the same set of facts.  If one determines that a defendant faces multiple punishments for two offenses because they contain separate elements, that same determination should apply when deciding whether the methods of committing an offense constitute separate elements or are merely means of committing a single element.  For example, if the offense of abduction is not allied with kidnapping because abduction cannot be committed by deception,[FN10] then one must conclude that the methods of force, threat, or deception do not constitute separate means of the same element, but are separate elements that must be specified in a charging instrument or bill of particulars and upon which a jury must unanimously agree.

FN8. (1991), 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555.

FN9. *State v. Rance,* 85 Ohio St.3d 632, 637, *1999-Ohio-291,* 710 N.E.2d 699.

FN10. See *State v. Fleming* (1996), 114 Ohio App.3d 294, 297-298, 683 N.E.2d 79.
{¶ 15} The difficulty with the current state of allied offense analysis is that it too often fails to distinguish between alternative means and separate elements, and instead treats every alternative as a separate element regardless of its character.  Because of this approach very few statutory offenses can be viewed as allied and multiple punishments are favored.[FN11]  If each alternative is considered a separate element, however, very few offenses can be considered included for purposes of charging instruments or jury instructions, and consistency would demand that the alternatives be considered separate elements for purposes of jury unanimity as well.  The existence of a particular fact should not be considered an "element" for one purpose and a "means" for another, because it would be unfair to allow multiple punishments for offenses containing "elements" that are not required to be specified in an indictment or separately considered by a jury.[FN12]

FN11. *Rance,* supra; see, also, *State v. Richey,* 64 Ohio St.3d 353, 369,

*1992-Ohio-44,* 595 N.E.2d 915 (felony murder and underlying felony are not allied because statute lists nine separate predicates).

FN12. See *Schmuck v. United States* (1989), 489 U.S. 705, 717-718, 109 S.Ct. 1443, 103 L.Ed.2d 734 (indictment does not charge offenses that are not included, and defendant is not entitled to jury instruction unless offense is included).

{¶ 16} When viewed in light of the consequences for other determinations, we conclude that removal and restraint are separate means of completing a single element of a kidnapping, that element being a restriction of the victim's freedom. Removal to another location is, in fact, simply a variant on the restraint of liberty. Determining otherwise would allow the State to charge and punish Crotts with two counts of kidnapping based upon the separate acts of removal and restraint claimed here, even though both acts are associated with a single alleged purpose.

{¶ 17} Our decision here is consistent with the decision in *Whalen v. United States,*[FN13] in which the United States Supreme Court determined that multiple punishment analysis should consider the existence of statutory alternatives.[FN14] While this decision conflicts with the analysis used in *Rance* and *Richey,* supra, *Whalen* and *Richardson* provide a framework for consistent application of these principles that satisfies constitutional standards of due process and double jeopardy.[FN15] Therefore, the jury was required to find unanimously on the element of restraint, but it did not need to find unanimously on whether the restraint was accomplished by carrying the victim upstairs or grabbing his wrist when he tried to escape. The first and fifth assignments are overruled.

FN13. (1980), 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715.

FN14. *Id.* at 694.

FN15. Consistency, however, may not be the only constitutional requirement when a number of separate underlying offenses can be used as alternatives in proving a greater offense, as in *Rance, Richey,* and *Whalen.* In such cases the underlying offenses should be considered means for purposes of multiple punishment and lesser included offense analysis because they are predicates that show a single element of mens rea. *Schad,* 501 U.S. at 644. Nevertheless, the elements of the predicate felony require specificity in charging and juror unanimity because each represents conduct that is itself a violation of law. *Richardson,* 526 U.S. at 818-819.

*State v. Crotts*, 2003 WL 21101251, at *2-*3 (Ohio App. May 15, 2003).

Crotts does not demonstrate that the state appellate court's findings of fact were incorrect. Crotts argues, however, that the jury instruction was contrary to the holding in

*Richardson v. United States*, 526 U.S. 813 (1999), and thus violated his right to due process.

In *Richardson* the United States charged defendant with violating 21 U.S.C. § 848 ("§ 848"), which prohibits engaging in a continuing criminal enterprise.  A "continuing criminal enterprise" includes violations of drug statutes when "such violation is part of a continuing series of violations . . . ."  § 848(c).  The trial court instructed the jury that it must unanimously agree that Richardson committed at least three federal drug offenses, but did not instruct it that it had to agree as to the particular offenses Richardson committed.  The jury convicted Richardson, and the circuit court upheld the jury instruction.  The Supreme Court reversed.  It held that although a jury need not always decide unanimously which of several possible means a defendant used to commit an element of a crime, a jury in a § 848 case must unanimously agree not only that the defendant committed a continuing series of violations, but must also agree as to which specific violations the defendant committed.

In the instant case Crotts was charged with a single count of kidnaping.  The relevant statute, Ohio Rev. Code § 2905.01(A)(4), states:  "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: . . . (4) To engage in sexual activity . . . with the victim against the victim's will."  The victim in the instant case was 12 years old.  The elements applicable to Crotts, therefore, were "by any means remove or restrain another for purposes of sexual activity with the victim against the victim's will."  "By any means remove or restrain," because expressed in the alternative, is

34

a single element of the crime.  That is, if all other elements of the crime have been satisfied, the element of coercion is satisfied if the defendant is found *either* to have removed or restrained the victim.  In Crotts' case this element might be satisfied either by finding that Crotts removed the victim from the living room to Crotts' bedroom or by finding that Crotts restrained the victim by grabbing his wrist when he realized that Crotts was sexually assaulting him and tried to escape.

Crotts contends that *Richardson* should be understood to require that jury be unanimous as to whether Crotts removed the victim or restrained him.  Crotts errs.  The *Richardson* court stated in relevant part:

> Federal crimes are made up of factual elements, which are ordinarily listed in the statute that defines the crime.  A (hypothetical) robbery statute, for example, that makes it a crime (1) to take (2) from a person (3) through force or the threat of force (4) property (5) belonging to a bank would have defined the crime of robbery in terms of the five elements just mentioned.  Cf. 18 U.S.C. § 2113(a).  Calling a particular kind of fact an "element" carries certain legal consequences. *Almendarez-Torres v. United States,* 523 U.S. 224, 239, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).  The consequence that matters for this case is that a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element.  *Johnson v. Louisiana,* 406 U.S. 356, 369-371, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (Powell, J., concurring); *Andres v. United States,* 333 U.S. 740, 748, 68 S.Ct. 880, 92 L.Ed. 1055 (1948); Fed. Rule Crim. Proc. 31(a).
>
> The question before us arises because a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime.  *Schad v. Arizona,* 501 U.S. 624, 631-632, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion); *Andersen v. United States,* 170 U.S. 481, 499-501, 18 S.Ct. 689, 42 L.Ed. 1116 (1898).  Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat;  others might conclude he used a gun.  But that disagreement--a disagreement about means--would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

*Richardson*, 526 U.S. at 817.  The difference in Richardson's case is that Richardson was

35

charged under a statute that required the finding of a series of *violations*, *i.e.* crimes. The Court held that the jurors had to be unanimous as to which crimes Richardson committed. It also found that, as regards federal crimes,[5] jurors did not generally have to be unanimous as to the means element of a single offense.

Crotts was charged with a single count of kidnaping. Removal or restraint was the means by which the crime was effected. *Richardson* does not require that jurors be unanimous as to the means element of a single offense. Indeed, *Richardson* explicitly finds to the contrary. Thus, Crotts' argument that his conviction for kidnaping was contrary to the holding in *Richardson* and thereby violated his right to due process fails because his conviction was *not* contrary to the holding in *Richardson*. Crotts' second ground for belief is, therefore, without merit.

For the reasons given above the magistrate judge recommends that the court overrule Crotts' second ground for relief.

B. *Ground three: Crotts was denied due process when the court improperly allowed the introduction against him of evidence of other acts and allowed the victim's brother to testify as to his belief in Crotts' guilt*

Crotts contends that he was denied due process at trial by the introduction of

_____

[5]  Even if Crotts' contention were correct that his conviction was contrary to the holding in *Richardson*, he would not be able to win relief. Richardson was charged under a statute structured very differently than the Ohio kidnaping statute, and his conviction arose under a very different set of circumstances than the circumstances surrounding Crotts' indictment. Given these differences, the decisions of the Ohio courts could not be said to be directly contrary to clearly established federal. The Ohio courts reached a conclusion on a question of law substantially different from that posed by § 848 and arrived at an opposite result from *Richardson* on a materially distinguishable set of facts. Because Crotts' case is markedly distinguishable from Richardson's in both law and facts, Crotts could not win relief based on *Richardson* even if his conviction for kidnaping were contrary to its holding.

evidence of other acts and by the testimony of the victim's brother that he believed that Crotts was guilty. Respondent denies that the testimony and other evidence was introduced improperly and denies that the trial court violated Crotts' right to due process.

The right to a fair trial is a right implicit in the due process clauses of the Fifth and Fourteenth Amendments. *See United States v. Agurs*, 427 U.S. 97, 107 (1976). The analysis of alleged violations of the right is identical under either amendment. *Id.* "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law." *Murchison*, 349 U.S. at 136 (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 532 (1927)).

Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are not usually the basis for relief in a federal habeas corpus. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Habeas relief is available only when a violation of a state's evidentiary rule results in the denial of fundamental fairness. *Id.* A court considering a habeas petition seeking relief based on such "trial error"[6] should

---

[6] According to the Supreme Court,

[t]rial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." *Id.,* at 307-308. At the other end of the spectrum of constitutional errors lie

assess the alleged error by (1) evaluating the alleged error in the context of the entire record; (2) asking whether the error, if any, had a substantial and injurious effect on the jury's verdict, and (3) granting relief only if there is grave doubt about whether the error was harmless.  *Brecht*, at 638.  A court may not grant habeas relief unless it believes that the error had a substantial and injurious effect on the jury's verdict.  *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

Crotts raised in his direct appeal the claims that he was denied due process because the trial court improperly allowed the introduction of evidence of other acts and allowed the victim's brother to testify as to his belief in Crotts' guilt.  The state appellate court reviewing these claims made the following relevant findings of fact and conclusions of law:

> {¶ 9} The appellate court reversed the convictions because it found certain testimony and evidence to be inadmissible "other acts" evidence.  The evidence found offensive by the appellate court included (1) victim testimony that Crotts had photographs of nude juveniles and adults on his computer, (2) testimony that Crotts took the victim and his brother to an "all gay" church, (3) testimony that Crotts attended a second church catering to the gay community, (4) a photograph of P and a male friend, which Crotts had captioned "Sisters for Life," (5) a second photograph, captioned "C'mon 'n' Lick Me!," of the same friend unclothed, partially covered by a sheet, and (6) testimony from P that he had "personal experiences" with Crotts that "would make [him] believe he's guilty * * *."

> {¶ 10} We will begin by examining the admissibility of the first five items of evidence.  The opinion testimony will be addressed separately.  The state argues that the evidence listed in (1) through (5) above was properly admitted under Evid.R. 404(B)

---

"structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards."  *Id.,* at 309. The existence of such defects--deprivation of the right to counsel, for example--requires automatic reversal of the conviction because they infect the entire trial process.  See *id.,* at 309-310.  Since our landmark decision in *Chapman v. California,* 386 U.S. 18 (1967), we have applied the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type.

*Brecht v. Abrahamson,* 507 U.S. 619, 629-30 (1993).

38

to demonstrate Crotts's intent, motive, and plan. The appellate court found that this evidence could not be used to show Crotts's intent because "Crotts denied the acts, not their alleged purpose." The court reasoned, "[I]f the State could prove the acts occurred as alleged, Crotts's intent would not be in dispute." The court also stated that the above-mentioned evidence, though purportedly offered to show intent, plan, or motive, actually goes solely to Crotts's propensity to commit the crime and was admitted in violation of Evid.R. 404(B).

{¶ 11} The appellate court dismissed the state's argument that the evidence shows Crotts's plan to desensitize the victim and his brothers to pedophilia in order to facilitate his sexual advances, opining, "The inference of a plan can be made only if one first infers that Crotts is homosexual, that he, therefore, is attracted to minors, and that he employed boys in his businesses as a means of gaining access to them. Not only are these inferences invalid, they can only be made after one has made the forbidden inference of propensity." (Footnote omitted.)

{¶ 12} We must note that the modern understanding of pedophilia is that it exists wholly independently from homosexuality. The existence or absence of one neither establishes nor disproves the other. "The belief that homosexuals are attracted to prepubescent children is a baseless stereotype." *State v. Bates* (Minn. App. 1993), 507 N.W.2d 847, 852. Thus, evidence of homosexuality is not relevant to establish pedophilia. Id. We are forced to state the obvious because of the reckless and bald assertion by the appellate court that the prosecutor argued, and the jury believed, that because Crotts is homosexual, he therefore is also a pedophile. Fortunately, the appellate court is mistaken. Neither the prosecutor nor the trial judge was that obtuse. In fact, on the eve of trial, the trial judge warned the prosecution to be very careful in its treatment of the issue:

{¶ 13} "[T]he State is to be very clear that [Crotts's] homosexuality cannot be used in a manner of prejudice against the defendant.

{¶ 14} "* * * The Court may even on its own, step in if the Court feels that way and I will be watching for that.

{¶ 15} "* * * I do want to severely caution [the prosecution] that this Court is not going to have homosexuality as the focus of the trial.

{¶ 16} "I'm not going to allow the jurors to cast their verdict based on homosexuality."

{¶ 17} The prosecutor did not argue that Crotts abused J because Crotts is homosexual. Rather, the prosecutor argued that over the course of time, Crotts attempted to condition J and his brothers to accept pedophilia as appropriate conduct. The state argues that the controverted evidence was used to support this legitimate argument. The question we must answer is whether the appellate court erred when it ruled that the trial court had abused its discretion by admitting the

39

evidence to be used for this purpose.

{¶ 18} Generally, extrinsic acts may not be used to suggest that the accused has the propensity to act in a certain manner.  Evid.R. 404(B); *State v. Smith* (1990), 49 Ohio St.3d 137, 140, 551 N.E.2d 190.  However, there are exceptions.  Evid.R. 404(B) allows such evidence where it is offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Even more relevant is R.C. 2945.59, which provides, "In any criminal case in which the defendant's motive or intent * * * is material, *any acts of the defendant* which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." (Emphasis added.) The defendant's motive in this case is absolutely material, as he was charged with kidnapping with a sexual-motivation specification.

{¶ 19} Neither R.C. 2945.59 nor Evid.R. 404(B) "requires that the other act be 'like' or 'similar' to the crime charged, as long as the prior act tends to show one of the enumerated factors."  *State v. Shedrick* (1991), 61 Ohio St.3d 331, 337, 574 N.E.2d 1065.  The appellate court stated that proof of Crotts's plan is immaterial if the state establishes that the defendant committed the acts charged.  While this statement is tautologically true, the standard for admitting other-acts evidence is not whether the evidence is necessary to prove an element of the offense.  Rather, the issue is whether the evidence "tend[s] to show" motive, plan, or intent.

{¶ 20} The appellate court's assertion that the state did not need to prove Crotts's motive, intent, scheme or plan to prove that he committed the charged offenses was misguided in several ways.  First, it is not true in this case.  In order to prove the sexual-motivation specification to the kidnapping count, the state needed to prove motivation.  See R.C. 2971.01(J) and (K).  Second, even if the statement were true, it does not follow that evidence establishing motive, intent, scheme, or plan is immaterial.  Such evidence is always material because it tends to show why one version of events should be believed over another.

{¶ 21} In this case, the trial court aptly limited the evidence to protect the defendant. The trial court excluded from evidence any testimony regarding whether Crotts is homosexual or has AIDS.  It also excluded testimony that Crotts walked around his house naked in the presence of juveniles and had a sexual relationship with P.  The trial court excluded evidence that Crotts exposed J to pornography and sexual devices.  The court severed this case from charges that Crotts sexually abused J's twin brother.  The trial court also sustained an objection when the prosecutor asked P the meaning of "Sisters for Life."  Likewise, the court prevented P from testifying that he witnessed Crotts "lie[ ] about his health" to a sexual partner, in the apparent belief that it would lead the jury to speculate about Crotts's HIV status.  The photos

40

of P and his friend were admitted only to show that Crotts was indeed sexually attracted to young boys. Even so, the court carefully limited this evidence that Crotts was attracted to minors out of concern that cumulative evidence of this nature would be prejudicial. J's testimony that he viewed child pornography on Crotts's computer is consistent with the state's desensitization theory of the case. The trial court's careful stewardship of this sensitive evidence demonstrated a skillful application of the evidentiary rules and fell well within her realm of discretion.

{¶ 22} The remaining controverted evidence took the form of witness testimony, which by its very nature cannot always be curtailed in advance. Two of the statements described Crotts's introduction of the boys to what one of them called an "all gay" church and to a second church that was characterized as gay-friendly. The state offered this testimony as an element of its theory that Crotts exposed J to sex through photos, movies, casual nudity, and environment to desensitize him to man-boy sexual relationships. One of the environmental factors happened to be exposure to homosexuality. The trial court recognized that homosexuality does not equate with pedophilia. However, it also found that the state's theory was not unreasonable. Thus, the jury was permitted to weigh this evidence. Crotts argues that this statement prejudiced him by implying that he is homosexual, leading the jury to convict him based upon his homosexuality.

{¶ 23} As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th Ed.1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence-to do so would make reaching any result extremely difficult. Rather, only evidence that is *unfairly* prejudicial is excludable.

{¶ 24} " ' 'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.' " *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 743 N.E.2d 890, quoting Weissenberger's Ohio Evidence (2000) 85-87, Section 403.3.

{¶ 25} Because fairness is subjective, the determination whether evidence is unfairly prejudicial is left to the sound discretion of the trial court and will be overturned only if the discretion is abused. *State v. Robb* (2000), 88 Ohio St.3d 59, 68, 723 N.E.2d 1019. The unfairness that the appellate court found here apparently was the danger that the jury would presume that Crotts was guilty if it learned that he is homosexual.

Although we would be reluctant to overturn this ruling had it been made by the trial court, the court of appeals failed to articulate why the trial court acted outside its discretion when it concluded that the limited references to "all gay" and gay-friendly churches was not prejudicial.  The appellate court simply substituted its judgment for that of the trial court without demonstrating that the lower court abused its discretion.

{¶ 26} The trial court granted Crotts's motion to exclude evidence that he is homosexual.  No direct evidence that Crotts is gay was admitted.  Testimony that Crotts took the children to allegedly homosexual churches does not lead so inexorably to the conclusion that he is homosexual that admission of such testimony was an abuse of discretion.  Theoretically, testimony that a heterosexual male took children to a homosexual church would be more supportive of the state's theory that it was done for the purpose of desensitizing J because a  straight male would have less reason to attend a gay church, and his motive for taking a child there would be that much more suspicious.

{¶ 27} The final controverted testimony was that P testified during redirect, "Well, I have had personal experiences with the defendant that would make me believe he's guilty, but I've also known my brothers all their lives and heard their lies, so it's kind of a lose/lose situation."  In its opinion, the appellate court quoted only the first half of this statement.  The qualification that follows the "but" minimizes the effect of the first clause.  It is not clear to us why the sentence, taken as a whole, should be excluded.  Lay witness opinion testimony is permitted where it is "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."  Evid.R. 701.  Opinion testimony is not excludable "solely because it embraces an ultimate issue to be decided by the trier of fact."  Evid.R. 704.  This case was ultimately one of credibility.  J told one version of events, and Crotts told another.  Testimony expressing an opinion on whose version is more likely to be true would certainly aid the jury in reaching its conclusion.  "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but * * * the evidence may refer only to character for truthfulness or untruthfulness * * *."  Evid.R. 608(A).  P's testimony was directed to Crotts's character for untruthfulness.  And since P portrayed his brothers as habitual liars virtually in the same breath,  Crotts's claims of unfair prejudice must lose what little force they otherwise might have had.

*State v. Crotts*, 104 Ohio St. 3d 432, 434-37, 820 N.E.2d 302, 305-09 (2004)

Crotts does not show that the Ohio Supreme Court's application of the law was

erroneous,[7] nor does he show by clear and convincing evidence that its relevant factual findings were false.[8]  Moreover, Crotts cites no Supreme Court case arising from materially indistinguishable facts holding that a defendant is deprived of due process by admission of evidence and testimony such as that admitted against Crotts.[9]  In the context of all the evidence presented at the trial, including the testimony of a victim who could not be mistaken as to the identity of his attacker, it cannot be said that the allegedly improper evidence had a substantial and injurious effect on the jury.  For these reasons, the magistrate judge recommends that the court overrule Crotts' third ground for relief.

C.    *Ground four:  Crotts was denied effective assistance of trial counsel when counsel failed to object to improper argument and improper jury instructions*

Crotts contends that he was denied effective assistance of trial counsel when counsel failed to object to allegedly improper jury instructions and improper argument.  In particular, Crotts argues as follows:

---

[7] Crotts largely fails to address the exceptions to evidence exclusion discussed by the Ohio Supreme Court.  When he does, he cites cases which prohibit the admission of evidence of other crimes and prohibit testimony regarding an expert's belief in the truth or falsity of a child's testimony.  Neither evidence of other crimes nor expert opinion regarding a child's testimony was at issue in Crotts' case.

[8] The state court did err in stating that the alleged abuse of the victim was severed from the case alleging the abuse of the victim's twin brother.  In fact, the case was severed from the case of a third individual.  Crotts does not explain how this mistake is relevant.

[9] Crotts cites only one Supreme Court case in support of his argument, *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620 (1944).  In that case, the Supreme Court overturned a grant of summary judgment for defendant in an action to recover royalties regarding whether there remained any issue of fact with regard to the proposition that natural gas prices at the wellhead in question ever exceeded 3¢ per thousand cubic feet. In *Sartor*, the Court held that there was sufficient evidence as to show that the price had exceeded 3¢ per thousand cubic feet to create a question for a jury.  Crotts cites the case for the proposition that the questioning in his case invaded the province of the jury.  *Sartor* does not stand for that proposition.

> [C]ounsel failed to request a more definite bill of particulars when the filed bill only reiterated the general provisions of the statute and did not specify which act of petitioner formed the basis of the charge.  Counsel failed to request that the grand jury minutes be prepared to determine which incident constituted the kidnapping. The lack of clarity formed the basis for the showing of a **"particularized need."** Counsel failed to object to the state's argument that either act of petitioner could have formed the basis of the charge.  Counsel failed to object to the jury instructions of the trial court or have the court provide the jury with a verdict form which would have properly reflected the essential elements, thus ensuring the petitioner's right to a unanimous finding on all of the essential elements of the offense of kidnapping.

Traverse at 13-14 (spelling and emphasis in the original).  Respondent denies that Crotts' trial counsel was ineffective.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997). A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms."  *Strickland*, 466 U.S. 687-

44

88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.   *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not

45

result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Crotts fails both the first and the second prong of the test for ineffective assistance of counsel.  As already shown, Crotts' right to due process did not require juror unanimity as to the means by which Crotts removed or restrained his victim.  Further, Crotts fails to show that the Ohio courts erred in finding that Ohio law did not require juror unanimity on this question.  Crotts fails to show, therefore, that it was error for trial counsel not to request a more definite bill of particulars, not to request that the grand jury minutes be prepared to determine which incident constituted the kidnaping, not to object to the state's argument that either act of petitioner could have formed the basis of the charge, or not to object to the jury instructions or request a verdict form to secure a unanimous finding.

Crotts also fails to make any argument to demonstrate that he was prejudiced by the alleged error.  Because the jury instructions were not erroneous and the prosecutor's argument was not improper, Crotts cannot be said to have been prejudiced by his attorney's failure to object to them.  Such objections would have been futile.

Crotts' arguments do not pass either the first or second prong of the test for ineffective assistance of counsel.  For this reason the magistrate judge recommends that the court overrule Crotts' fourth ground for relief.

D.      *Ground seven:  Crotts was denied effective assistance of appellate counsel when counsel failed to argue meritorious assignments of error*

46

In his seventh ground for relief Crotts contends that he was denied effective assistance of appellate counsel when appellate counsel failed to present obvious and meritorious assignments of error. Crotts' two remaining arguments regarding alleged ineffectiveness of appellate counsel are that appellate counsel was ineffective for failing to argue that Crotts was denied due process when his testimony was judged differently than the testimony of other witnesses and that Crotts was improperly convicted of gross sexual imposition without requiring any proof of a culpable mental state.  Respondent denies that Crotts' appellate counsel was ineffective.

Defendants have a right to appointed counsel for the first appeal of right.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  An appellant has no constitutional right to have every nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues on appeal are properly left to the sound judgment of counsel.  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002 (1990).  The standard enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).  That is, Crotts must show that appellate counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by appellate counsel's inadequate performance.

Crotts' contention that he was denied effective assistance of appellate counsel because appellate counsel failed to argue that the jury was improperly instructed to judge his testimony differently than the testimony of other witnesses fails because Crotts does not show that he was prejudiced by the alleged error.  Crotts' contention that his testimony was judged differently than the testimony of other witnesses arises from the following

47

instruction from the trial court to the jury:

> The defendant has testified as a witness in this case.  You will weigh his testimony the same as you weigh the testimony of other witnesses.  Just because he's the defendant is no reason for you to disregard and set aside his testimony.  And you will give his testimony the weight it's entitled to receive, taking into consideration his interest in the outcome of the case and apply to his testimony the same rules that you apply to the testimony of all other witnesses.

Transcript of Proceedings, Answer, Exh. 66, p. 678.  Crotts claims that the phrase "taking into consideration his interest in the outcome of the case" improperly discussed Crotts' credibility and exerted an undue influence on the jury.

Crotts does not make any argument that he was prejudiced by this alleged error. Even assuming that this instruction was erroneous, it surpasses belief that had the objectionable phrase been removed the outcome of Crotts' trial might have been different, given the testimony of a victim who could not be mistaken in his identification of Crotts.  As Crotts fails to show that he was prejudiced by the alleged error, Crotts cannot obtain relief based on that error.

Crotts also contends that he was denied effective assistance of appellate counsel because counsel did not argue that the trial court improperly allowed him to be convicted of gross sexual imposition without requiring proof of a culpable mental state.  Crotts cannot obtain relief based on this argument because, as is shown below, *infra* at 49-50, Crotts' contention that the court improperly allowed him to be convicted of gross sexual imposition without requiring proof of a culpable mental state is without merit.  As this argument is without merit, appellate counsel cannot be said to have been ineffective for failing to raise the argument.

For these reasons the magistrate judge recommends that the court overrule the

48

remainder of Crotts' seventh ground for relief.

E.    Ground ten:  Crotts was denied due process when the court improperly allowed him
      to be convicted of gross sexual imposition without requiring proof of a culpable
      mental state

Crotts contends that he was denied due process when the trial court failed to require

the state to prove that Crotts had a culpable mental state before allowing him to be

convicted of gross sexual imposition.  Respondent denies that the trial court erred.

The state appellate court reviewing Crotts' application to reopen made the following

findings of fact and conclusions of law in adjudicating Crotts' contention that trial counsel

was ineffective for failing to assert that the state had to prove a culpable mental state:

> The offense of gross sexual imposition, as applied to a victim who is less than
> thirteen years of age, constitutes a strict liability crime which requires no proof of a
> precise culpable state of mind.  *State v. Astley* (1987), 36 Ohio App.3d 247, 523
> N.E.2d 322;  *State v. York,* Sixth Appellate District Case No. WD-03-017,
> 2003-Ohio-7249.  Both this court and the Supreme Court of Ohio found that the
> record herein clearly delineated that the victim of the offense of gross sexual
> imposition was under the age of thirteen at the time of the offense.  In addition, a
> complete review of the transcript of Crotts' trial demonstrates that the victim was
> under the age of thirteen at the time of the commission of the offense of gross
> sexual imposition.  See Tr. 52, 57, 58, 59, 90, 91, and 191.  Thus, there exists no
> error with regard to the issue of proof of a culpable mental state vis-a-vis the offense
> of gross sexual imposition . . . .

*State v. Crotts,*  2006 WL 563060, at *2 (Ohio App. March 6, 2006).

Crotts fails to show that any of the state appellate court's conclusions of law or

findings of fact were erroneous.  Crotts argues that the trial court erred in finding that gross

sexual imposition upon a victim less than thirteen years of age is a strict liability crime

which requires no proof of a culpable state of mind.  Crotts cites in support of this

proposition *State v. Moody*, 104 Ohio St. 3d 244, 819 N.E.2d 268 (2004).  As *Moody* stands

only for the proposition that the culpable mental state of recklessness applies to the offense

of contributing to the unruliness or delinquency of a child, the citation of that case is a *non sequitur*.

Crotts does not demonstrate that his conviction violates a holding of the Supreme Court arising from materially indistinguishable facts.  For this reason the magistrate judge recommends that the court overrule Crotts' tenth ground for relief.

IV

For the reasons given above the magistrate judge recommends that the court deny Crotts' petition.


Date:  April 16, 2007                    /s/Patricia A. Hemann
                                         Patricia A. Hemann
                                         United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).