UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                               :

STEVEN CROTTS                :         CASE NO. 1:06-CV-2519
                               :

           Petitioner,        :         JUDGE JAMES S. GWIN
                               :

vs.                         :         ORDER & OPINION
                               :        [Resolving Doc. 11]

MARGARET BRADSHAW, Warden,   :
                               :

          Respondent.      :
                               :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      On October 18, 2006, Petitioner Crotts filed a Petition for a Writ of Habeas Corpus pursuant to U.S.C. § 2254. [Doc. 1].  On January 29, 2007, Respondent Bradshaw filed a Return of Writ. [Doc. 6].  On January 14, 2005, the Court referred the case to Magistrate Judge Patricia A. Hemann for a Report and Recommendation, pursuant to Local Rule 72.1.  [Doc. 4]. On April 14, 2007, Magistrate Judge Hemann issued a report and recommended that the Court deny the Petition for Writ of Habeas Corpus.  [Doc. 11].  On May 25, 2007, Petitioner filed a timely Objection to Magistrate Judge Hemann's Report and Recommendation.  [Doc. 15].

      Upon *de novo* review of the record and the reasons discussed in the Magistrate Judge's Report and Recommendation, the Court amends and overrules, in part, the Report and Recommendation and otherwise adopts the findings of the Magistrate Judge, except as to those regarding the *Blakely* violation.  The Court **CONDITIONALLY GRANTS** Petitioner's application for a writ of habeas corpus.

Case No. 1:06-CV-2519
Gwin, J.

## I. Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* This presumption of correctness also applies to findings of fact made by a state appellate court based on the trial record. *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).

The Ohio Supreme Court described the facts underlying Petitioner Crotts's conviction as follows:[1]

> {¶ 1} Steven Crotts was arrested on January 16, 1999, following a police investigation of an alleged sexual assault occurring at his home. The victim, 12-year-old "J," alleged that he and his twin brother, "B," had shoveled snow at Crotts's residence on January 15. After Crotts paid the boys for shoveling snow, they attended an Awana church event with him. Following the event, they rented videos to watch at Crotts's home. The twins intended to spend the night there. After preparing dinner for the boys, Crotts fixed a plate for J, while B fixed his own plate. While the boys watched videos over dinner, Crotts also brought a glass of root beer into the living room for J to drink, while B poured his own. J and B reported that Crotts offered them a white pill, later determined to be melatonin, telling them it would help them sleep better and live longer. Both boys refused to ingest the pills, instead putting the pills in their pockets.

> {¶ 2} B testified that J fell asleep unusually early that night. J recalled feeling woozy and falling asleep on the couch. He recalled being carried up the stairs at some point; he remembered seeing two white hands, Crotts's face, and a pair of glasses. J did not recall protesting. J believed that Crotts had somehow managed to slip him the white pill to make him drowsy.

---

[1] Petitioner objects to this characterization of the facts, as the Ohio Supreme Court noted that the trial was severed from another charge of Gross Sexual Imposition and erroneously stated the victim in the other charge was J's twin brother. In fact, it was another victim. The Court does not find this small error "clear and convincing evidence" to overcome the presumption of correctness as to the Ohio Supreme Courts characterization of the facts of the crime. The Court also reminds petitioner's counsel that the names of minor children should be redacted from public filings. Local Rule 7.1. This is especially true of alleged victims of forms of sexual assault.

Case No. 1:06-CV-2519
Gwin, J.

{¶ 3} J woke up the next morning in Crotts's bedroom on top of Crotts. J was naked except for his socks. Crotts was also naked. J stated that when he awakened, he was facing the appellant in a "riding position" and felt his penis rubbing against Crotts's penis. He felt Crotts's hands on his buttocks, moving him up and down. J also noted that both his penis and Crotts's penis were erect and lubricated with oil. J yelled at Crotts to get off him and attempted to climb off the bed. Crotts smiled and said to him, "I know what you're doing," and grabbed J by the wrists. When J finally managed to get off the bed, he felt a wet substance in his pubic area. He put on his shorts and ran downstairs, where he awakened his twin brother, yelling, "Steve was trying to rape me-he was trying to do something to me." J called the police.

{¶ 4} The twins' older brother, 16-year-old P, worked for and resided with Crotts. P never paid rent to Crotts; while he was living there, Crotts took pictures of P and his friend in risqué poses that Crotts printed with the captions "C'mon 'n' Lick Me" and "Sisters for Life." P testified that he and a male friend returned to Crotts's home in the early morning hours of January 16, 1999 and saw his younger brother, B, sleeping on the couch alone. P and his friend went upstairs to go to sleep. They were awakened several hours later by sounds of a commotion in the house. Two officers came into his bedroom with their guns drawn. P heard J saying, "Not in there, in here," and heard the shower running. P remained in his room until after Crotts was taken to the police station. He and his friend later left the residence at the order of the police.

{¶ 5} J and B were taken to the police station, where they were interviewed. J was then taken to the hospital and a rape-kit examination was performed. The examining doctor, Cary Scott, noted the presence of an emollient on J's body, which may have been olive oil. Dr. Scott noted no signs of trauma or physical evidence of molestation on the victim; however, Dr. Scott also noted that a lack of findings was not uncommon if a lubricant had been used or there was no forced penetration.

{¶ 6} The Bureau of Criminal Identification and Investigation ("BCI") performed a chemical analysis of the white pill that B had turned over to police. Forensic scientist Jeffrey Houser determined that the white pill was melatonin, a dietary supplement. No tests were performed to determine whether melatonin had been ingested by J. The BCI report also contained the results of tests performed to find physical evidence on J's shorts. The report indicated the presence of sperm from J but found no evidence of sperm or DNA from Crotts.

{¶ 7} Crotts denied the allegations made against him. He asserted that he was awakened on the morning of January 16, 1999 by someone throwing shoes at him. He ignored it and tried to go back to sleep, but one of the twins-he couldn't tell which one-appeared at his bedside with a bottle of oil in his hand, poised to pour the oil on him. Crotts became angry and pushed the boy against the wall. The boy spilled the

Case No. 1:06-CV-2519
Gwin, J.

> oil against the wall, further angering Crotts, and the boy ran out, still carrying the
> bottle. A few minutes later, one of the twins came into the room, tried to pull the
> sheet off Crotts, and again attempted to pour olive oil on him. Crotts grabbed the
> boy's arm, twisted it, and the boy fell to the ground. Crotts was naked at the time. He
> told the boy to give him the oil or he was going to "beat [him] like [his] father does."
> The boy ran downstairs, yelling that he was going to sue Crotts. Crotts stayed in bed
> a little longer and then got up and took a shower. The next thing he knew, he heard
> police telling him to get out of the shower.
>
> {¶ 8} Crotts was convicted of one count of kidnapping with a sexual-motivation
> specification and two counts of gross sexual imposition, with each of the latter two
> counts carrying a specification that the victim was under 13 years of age. Crotts was
> adjudicated to be a sexual predator.

*State v. Crotts*, 104 Ohio St. 3d 432, 432-34 (2004).

## II. Procedural History

On May 2, 2002 Crotts moved in the trial court for a new trial on the grounds that there was

not sufficient evidence to sustain a guilty verdict.  In May 24, 2002, the state trial court held a

hearing on the motion and denied it.  On May 29, 2002 the state trial court sentenced Crotts to five

years' imprisonment on each of the counts of sexual imposition, those terms to be served concurrent

to each other, and consecutive to eight years' imprisonment on the kidnaping charge for a total

sentence of thirteen years.

Crotts filed a timely notice of appeal of his conviction and sentence. He raised seven

assignments of error:

> First Assignment of Error
> The conviction of kidnaping is void in this instance as the deficient indictment and
> jury instruction allowed the appellant to be convicted with a non-unanimous verdict.
> Second Assignment of Error
> The evidence is insufficient to support a finding of Kidnaping pursuant to R.C.
> §2905.01.
> Third Assignment of Error
> The trial court erred by allowing prejudicial other acts evidence to be introduced to
> the jury.

-4-

Case No. 1:06-CV-2519
Gwin, J.

> Fourth Assignment of Error
> The trial court erred by allowing the alleged victim's brother testify as to his belief of the appellant's guilt.
> Fifth Assignment of Error
> Trial counsel's failure to object to erroneous argument and jury instructions constituted ineffective assistance of counsel.
> Sixth Assignment of Error
> The evidence is insufficient to find the appellant to be a sexual predator under R.C. §2950.09.
> Seventh Assignment of Error
> The trial court erred by sentencing the appellant to a maximum consecutive sentence.

On May 27, 2003 the state appellate court granted Crotts relief with respect to the third assignment of error, denied relief with regard to his first, second, and fifth assignments of error, and found all other assignments of error moot. The appellate court remanded the case to the trial court for a new trial.

On May 19, 2004 Crotts moved in the trial court to vacate the judgment and sentence against him. On June 3, 2004 the court denied the motion to vacate. On June 22, 2004, Crotts moved on for the court to reconsider its decision, and the court denied this motion on August 2, 2004.

The State of Ohio timely filed a notice of appeal to the Ohio Supreme Court of the state appellate court's decision on the other-acts evidence. Regarding the admission of other acts evidence, the state court of appeals had reversed the conviction and had remanded Crotts' case for a new trial. After receiving Ohio's notice of appeal, Crotts failed to file a cross appeal although he filed a memorandum making seven legal arguments similar to the arguments that he had raised in the appellate court. Crotts did not file a notice of appeal or cross-appeal as seemingly required by Ohio Sup. Ct. Prac. R. II, §2(A)(2)(a). On October 8, 2003, the Ohio Supreme Court accepted jurisdiction for the state's appeal and denied Crotts' cross-appeal without explanation.

On December 15, 2004 the Ohio Supreme Court reversed the decision of the state appellate

Case No. 1:06-CV-2519
Gwin, J.

court and remanded the case to the state appellate court to consider the assignments of error the

appellate court had previously found moot. On December 27, 2005, Crotts moved for

reconsideration of the Ohio Supreme Court's decision. On February 16, 2005 that Court denied

Crotts' motion. Crotts petitioned the United States Supreme Court for a writ of certiorari on May

16, 2005.  On July 5, 2005, the Supreme Court denied the petition.

Prior to the state appellate court's reaching a decision on remand from the Ohio

Supreme Court, Crotts attempted to file a supplementary brief to argue additional assignments of

error to the appellate court. Among these assignments of error was a claim that his sentence violated

*Blakely v. Washington*, 542 U.S. 296 (2004). The court rejected this brief as beyond the scope of the

Ohio Supreme Court's remand to the appellate court.

On July 26, 2005 the appellate court journalized a decision overruling Crotts' fourth, sixth,

and seventh assignments of error. On July 11, 2005, Crotts moved for reconsideration of the court's

decision, and the court denied this on July 26, 2005.  Crotts filed a timely notice of appeal in the

Ohio Supreme Court. In his memorandum in support of jurisdiction, Crotts asserted five assignments

of error:

> PROPOSITION OF LAW NO. I
> A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN A COURT IN
> SENTENCING A FIRST OFFENDER IMPOSES MAXIMUM CONSECUTIVE
> SENTENCES WHERE THE RECORD REFLECTS THAT THE COURT GIVES
> NO CONSIDERATION TO THE STATUTORY FACTORS CONCERNING
> WHETHER OR NOT THE OFFENSE IS GREATER OR LESSER THAN
> CONDUCT NORMALLY CONSTITUTING THE OFFENSE.
>
> PROPOSITION OF LAW NO. II
> A DEFENDANT IS SUBJECTED TO UNCONSTITUTIONAL MULTIPLE
> PUNISHMENTS WHEN THE COURT FAILS TO MERGE A KIDNAPPING
> COUNT WITH THE COUNTS OF GROSS SEXUAL IMPOSITION.

-6-

Case No. 1:06-CV-2519
Gwin, J.

> PROPOSITION OF LAW NO. III
> A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN A COURT
> ALLOWS A WITNESS TO GIVE AN OPINION AS TO THE CREDIBILITY OF
> ANOTHER WITNESS.
>
> PROPOSITION OF LAW NO. IV
> A DEFENDANT IS DENIED HIS RIGHTS UNDER THE SIXTH AND
> FOURTEENTH AMENDMENTS WHEN HIS SENTENCE IS BASED ON FACTS
> FOUND BY THE COURT WHICH WERE NOT ALLEGED IN THE
> INDICTMENT NOR FOUND BY THE JURY.
>
> PROPOSITION OF LAW NO. V
> A DEFENDANT IS DENIED DUE PROCESS OF LAW WHEN A COURT FAILS
> TO DISMISS AN INDICTMENT WHEN A DEFENDANT'S RIGHT TO A
> SPEEDY TRIAL HAS BEEN VIOLATED.

(Spelling in the original).  On December 14, 2005 the Ohio Supreme Court denied Crotts leave to

appeal and dismissed his appeal as not involving any substantial constitutional question.

On September 23, 2005 Crotts applied pursuant to Ohio App. R. 26(B) ("R. 26(B)") to

reopen his direct appeal, alleging ineffective assistance of appellate counsel. Crotts argued that

appellate counsel had been ineffective for failing to argue the following:

> I
> THE DEFENDANT WAS UNCONSTITUTIONALLY SENTENCED TO
> MULTIPLE PUNISHMENTS WHEN THE COURT FAILED TO MERGE THE
> GROSS SEXUAL IMPOSITION AND KIDNAPPING CONVICTIONS.
>
> II
> DEFENDANT WAS DENIED HIS RIGHTS UNDER THE FIFTH AND
> FOURTEENTH AMENDMENT [sic] WHEN THE SENTENCE WAS BASED ON
> CLAIMS NOT ALLEGED IN THE INDICTMENT NOR FOUND BY THE JURY.
>
> III
> DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT
> FAILED TO DISMISS THE INDICTMENT WHEN THE DEFENDANT'S RIGHT
> TO A SPEEDY TRIAL HAD BEEN VIOLATED.
>
> IV
> DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS

Case No. 1:06-CV-2519
Gwin, J.

> CONVICTED OF GROSS SEXUAL IMPOSITION WITHOUT REQUIRING ANY
> PROOF OF A CULPABLE MENTAL STATE.
>
> V
> DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS
> TESTIMONY WAS TO BE JUDGED DIFFERENTLY THAN OTHER
> WITNESSES.

On March 6, 2006 the state appellate court found that raised or could have raised Crotts' first, second, and third grounds on direct review and the claims were, therefore, barred by *res judicata.* The court also found that grounds four and five were without merit and that Crotts had not been prejudiced by counsel's failure to raise these claims on appeal. The state appellate court, therefore, denied Crotts' application.

Crotts filed in the Ohio Supreme Court a timely appeal of the denial of his application for reconsideration. In his memorandum in support of jurisdiction, Crotts asserted the six propositions of law, the same five as stated above and he also asserted that he had been denied effective assistance as counsel failed to present claims of error which are apparent on the face of the record. On June 7, 2006 the Ohio Supreme Court dismissed Crotts' appeal as not involving any substantial constitutional question.

### III. Legal Standard

**A. AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), furnishes the standards of review of this Court's review of state court decisions in this habeas action. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

-8-

Case No. 1:06-CV-2519
Gwin, J.

established federal law as determined by the Supreme Court of the United States; or (2) resulted in

a decision that was based upon an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding." 28 U.S.C. § 2254(d). *See also Miller v. Francis*, 269 F.3d

609, 614 (6th Cir. 2001).

  The United States Supreme Court outlined the proper application of § 2254(d) in *Williams*

*v. Taylor*, 529 U.S. 362 (2000). To justify a grant of habeas relief under the "contrary to" clause,

"a federal court must find a violation of law clearly established by holdings of the Supreme Court,

as opposed to its dicta, as of the time of the relevant state court decision." *Miller*, 269 F.3d at 614

(internal quotations omitted) (quoting *Williams v. Taylor,* 529 U.S. 362 (2000)). Meanwhile,

"under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state

court identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 1523. The Sixth

Circuit holds that, even if a federal court could determine that a state court incorrectly applied

federal law, the court still could not grant relief unless it also finds that the state court ruling was

unreasonable. *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000).

  A violation of state law is not cognizable in federal habeas corpus proceedings unless such

error amounts to a fundamental miscarriage of justice or a violation of the right to due process in

violation of the United States Constitution. *Floyd v. Alexander*, 148 F.3d 615, 619, (6th Cir.), *cert.*

*denied*, 525 U.S. 1025 (1998). It is the obligation of the Court to accept as valid a state court's

interpretation of the statutes and rules of practice of that state. *Estelle v. McGuire*, 502 U.S. 62, 67-

68 (1991).

  Moreover, the factual findings of a state court are presumed to be correct. A federal court

-9-

Case No. 1:06-CV-2519
Gwin, J.

may only diverge from a state court's factual findings if the petitioner shows by clear and convincing evidence that the findings are erroneous.  *See* 28 U.S.C. § 2254(e)(1).

**B. Procedural Default**

A federal habeas court may not hear issues that the petitioner could have raised in the state court but failed to do so due to procedural default.  *See Wainwright v. Sykes*, 433 U.S. 72 (1977). In deciding whether the petitioner procedurally defaulted a claim, the Court applies four criteria: (1) whether there is a state procedural rule that is applicable to the petitioner's claim; (2) whether the petitioner failed to comply with that rule; (3) whether the procedural rule was actually enforced in the petitioner's case; and (4) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The Court will excuse procedural default if the petitioner demonstrates good cause for the default and prejudice resulting therefrom.  *See Wainwright*, 433 U.S. at 87.  The prejudice must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *U.S. v. Frady*, 456 U.S. 152, 172 (1982).

**C. Claims not Reached by the State Courts**

The AEDPA standard of review applies only to habeas claims that are "adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003).  "When a habeas claim is not adjudicated in state court, we apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact."  *Hargrave v. McKee*, 2007 FED App. 0697 (6th Cir. 2007) *citing Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

-10-

Case No. 1:06-CV-2519
Gwin, J.

**D. The Magistrate Act**

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of the Report and Recommendation to which the parties have made an objection. 28 U.S.C. § 636(b)(1).  Moreover, the factual findings of a state court are presumed to be correct. A federal court may only diverge from a state court's factual findings if the petitioner shows by clear and convincing evidence that the findings are erroneous.  28 U.S.C. § 2254(e)(1).

## IV. Analysis

**First Ground for Relief: First and Fourteenth Amendment**

Petitioner has procedurally defaulted his first ground for relief.  Crotts argued that his conviction was based in part on the exercise of his First Amendment rights of freedom of religion, association, and speech.  Crotts did not present this claim in any state court.

The procedural default doctrine applies to bar a federal court's review of a state prisoner's federal claim where that prisoner failed to give the state courts a "full and fair" opportunity to resolve that claim-as the exhaustion doctrine requires-and the prisoner cannot cure that failure because state-court remedies are no longer available. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A petitioner must fairly present to the state courts either the substance of or the substantial equivalent of the federal claim that he is presenting to a federal habeas court.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). To determine whether a petitioner "fairly presented" a federal constitutional claim to the state courts, the Court considers whether:

> 1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; 2) the petitioner relied upon federal cases employing the constitutional analysis in question; 3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or 4) the petitioner alleged facts well within the

-11-

Case No. 1:06-CV-2519
Gwin, J.

mainstream of the pertinent constitutional law.

*Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) (quotation omitted).

In this case, Petitioner did not argue that any evidentiary ruling violated the First Amendment, rather he asserts now that the Ohio Supreme Court's decision *itself* violated the First Amendment. Crotts says his first opportunity to be heard on the issue was his petition to the United States Supreme Court. In that petition, Crotts raised this claim on the First Amendment grounds. He argues that he has therefore not defaulted his claim.

The Ohio Supreme Court decision, however, was a ruling on appeal regarding the state trial court's evidentiary ruling that permitted evidence showing Crotts had attended an "all gay" church and another "gay friendly" church. Crotts could have raised his First Amendment argument both at trial and upon direct appeal. Instead, he delayed challenge to this evidentiary ruling on First Amendment grounds until after the Ohio Supreme Court had considered the ruling under its evidence rules. Thus, Crotts has failed to fairly present this claim to the Ohio state courts. *See, e.g., Williams v. Bagley,* 380 F.3d 932, 968-70 (6th Cir. 2004) (finding petitioner defaulted his claim by both failing to contemporaneously object to the alleged error and for failing to present the state courts with the same theory of relief).

"[W]here a federal habeas corpus petitioner raises a claim which has never been presented to any state forum, a federal court may properly determine whether the claim has been procedurally defaulted under state procedures. . . ." *Harris v. Reed*, 489 U.S. 255, 269 (1989). Since Crotts could have raised his First Amendment claim on direct appeal, he has procedurally defaulted his claim in the Ohio courts. *See, e.g., State v. Perry,* 10 Ohio St. 2d 175 , 180 (1967). Failure to raise the claim on direct appeal triggers Ohio's *res judicata* rule and this is an independent and adequate state

-12-

Case No. 1:06-CV-2519
Gwin, J.

procedural bar.  *See, e.g., Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994).  This procedural bar will

cause a petitioner to default his claim on federal habeas review unless he can establish cause and

prejudice. *Id.*

Crotts does not present cause and prejudice for his default nor does he demonstrate that a

failure to grant him relief would result in a fundamental miscarriage of justice.  For these reasons,

the Court dismisses Petitioner's first ground for relief.

**Second Ground for Relief: Sixth and Fourteenth Amendment**

Petitioner Crotts alleges that the jury instructions violated his Sixth and Fourteenth

Amendment due process rights.  Specifically, Petitioner argues that the jury instructions "charged

him under alternate theories of [kidnaping] that allowed the jury to find him guilty without reaching

unanimity as to a single theory of the crime and . . . [the instructions] did not require a unanimous

verdict to convict him of gross sexual imposition." [Doc. 11]. Respondent agrees that this claim was

exhausted but denies it should succeed. For the reasons set forth below, this Court overrules

Petitioner's second ground for relief.

The relevant portion of the jury instructions state that:

Before you can find the defendant guilty, you must find beyond a reasonable doubt
that . . . the defendant, by force, threat or deception removed . . . [the victim] from
the place where he was found, or restrained . . . [the victim] of his liberty for the
purpose of engaging in sexual activity as defined in Section 2907.01 of the Ohio
Revised Code with . . . [the victim] against his will.

[Doc. 7].  Petitioner raised this issue on direct appeal and there alleged that "the verdict is not

unanimous because there is a chance that some jurors found him guilty for carrying the child upstairs

while others found him guilty for grabbing his wrist." [Doc. 11].   Petitioner argues that these

-13-

Case No. 1:06-CV-2519
Gwin, J.

instructions violated his due process rights, as explained in *Richardson v. United States*, 526 U.S.

813 (1999).

In *Richardson*, the trial court "instructed the jurors that they 'must unanimously agree that

the defendant committed at least three federal narcotics offenses,' while adding, 'you do not . . .

have to agree as to the particular three or more federal narcotics offenses committed by the

defendant.'" *Id.* at 816. The Supreme Court noted that "a federal jury need not always decide

unanimously which of several possible sets of underlying brute facts make up a particular element,

say, which of several possible means the defendant used to commit an element of the crime." *Id.*

at 817 (citing *Schad v. Arizona*, 501 U.S. 624 (1991)).  It concluded that "[i]n this case, we must

decide whether the statute's phrase "series of violations" refers to one element, namely a "series,"

in respect to which the "violations" constitute the underlying brute facts or means, or whether those

words create several elements, namely the several "violations," in respect to each of which the jury

must agree unanimously and separately." *Id.* at 817-818.  The Court held that "a jury in a federal

criminal case brought under § 848 must unanimously agree not only that the defendant committed

some 'continuing series of violations' but also that the defendant committed each of the individual

'violations' necessary to make up that 'continuing series.'" *Id.* at 815.

This Court finds the facts in *Richardson* easily distinguishable from the facts presented here.

Petitioner was charged with a single count of kidnaping.  Ohio law provides that "[n]o person, by

force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally

incompetent, by any means, shall remove another from the place where the other person is found

or restrain the liberty of the other person, for any of the following purposes: . . . (4) To engage in

sexual activity . . . with the victim against the victim's will."  OHIO REV. CODE § 2905.01(A)(4).

Case No. 1:06-CV-2519
Gwin, J.

This Court agrees with the Magistrate's conclusion that the phrase "'By any means remove or restrain,' because expressed in the alternative, is a single element of the crime." The *Richardson* Court noted that "[i]f the statute creates a single element, a "series," in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three." 526 U.S. at 818. Applying that reasoning here, the jury would need only unanimously find that Petitioner "Crotts [either] removed the victim from the living room to Crotts' bedroom or . . . that Crotts restrained the victim by grabbing his wrist when he realized that Crotts was sexually assaulting him and tried to escape." This is exactly what the jury instructions required. The jury should not have been, and was not, required to unanimously determine which method Petitioner used to effectuate the element, 'removal' or 'restraint', so long as the jury unanimously concluded that Petitioner did one of the above. The Court in *Richardson* pointed out that

> [w]here, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement -- a disagreement about means -- would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely that the defendant had threatened force.

526 U.S. at 817. Thus, the jury instructions are not contrary to the holding of *Richardson*. Consequently, the state appellate proceeding finding the jury instructions valid did not involve an unreasonable application of *Richardson. Id.* The state court's ruling on this issue was ~~thus~~ reasonable and this Court overrules Petitioner's second ground for relief.

**Third Ground for Relief: Fourteenth Amendment**

Petitioner argues that his Sixth and Fourteenth Amendment due process rights were violated

-15-

Case No. 1:06-CV-2519
Gwin, J.

by the trial court's admission of other acts evidence and by testimony of the victim's brother.

Respondent argues that the Ohio courts reasonably applied clearly established federal law. This

challenged evidence consisted of:

> (1) victim testimony that Crotts had photographs of nude juveniles and adults on his
> computer, (2) testimony that Crotts took the victim and his brother to an "all gay"
> church, (3) testimony that Crotts attended a second church catering to the gay
> community, (4) a photograph of P [the victim's brother] and a male friend, which
> Crotts had captioned "Sisters for Life," (5) a second photograph, captioned "C'mon
> 'n' Lick Me!," of the same friend unclothed, partially covered by a sheet, and (6)
> testimony from P . . . [stating:] 'Well, I have had personal experiences with the
> defendant that would make me believe he's guilty, but I've also known my brothers
> all their lives and heard their lies, so it's kind of a lose/lose situation.'"

*Id.*

The right to a fair trial is implicit in the due process clauses of the Fifth and Fourteenth

Amendments. *See United States v. Agurs*, 427 U.S. 97, 107 (1976).  Errors in the application of state

law, especially evidentiary rulings, do not usually form the basis of habeas relief. *Cooper v.

Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Habeas relief is available only when a violation of a

state's evidentiary rule results in the denial of fundamental fairness. *Id.*  Generally, state-court

evidentiary rulings cannot rise to the level of due process violations unless they offend some

principle of justice so rooted in the traditions and conscience of our people as to be ranked as

fundamental. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (internal quotations omitted).

When evaluating a habeas petitioner's claims of trial error such as evidentiary rulings, the

court applies the standard found in *Brecht v. Abrahamson*. 507 U.S. 619, 637 (1993); *see also Fry

v. Pliler*, 127 S. Ct. 2321, 2328 (2007); *Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007).  Under

this standard, the Court, looking at the error in light of the entire record, asks "whether the error 'had

substantial and injurious effect or influence in determining the jury's verdict'" and grants relief only

Case No. 1:06-CV-2519
Gwin, J.

in grave doubt about whether the error was harmless. *Brecht*, 507 U.S. at 637 (citation omitted).

Thus, 'habeas petitioners . . . are not entitled to habeas relief based on trial error unless they can

establish that it resulted in 'actual prejudice.'" *Id.*    Nonetheless, "[i]f 'the matter is so evenly

balanced' that this Court has 'grave doubt' as to the harmlessness of the error, it 'should treat the

error, not as if it were harmless, but as if it affected the verdict. . .'" *Vasquez*, 496 F.3d at 575

(citation omitted).

Petitioner Crotts raised this issue on direct appeal.  The state appellate court found in favor

of Petitioner, but the Ohio Supreme Court reversed, finding that the admission of the evidence and

the testimony was not an abuse of the trial court's discretion.  *Id.*

There is no clearly established Supreme Court precedent which holds propensity evidence

violates due process. *See, e.g., Bugh,* 329 F.3d at 512-13 (denying habeas because of a lack of

Supreme Court precedent on this issue); *Estelle,* 502 U.S. at 75 n.5 (expressing no opinion on the

Constitutionality of such evidence).  While the Supreme Court has considered whether prior or other

acts testimony is permissible under the Federal Rules of Evidence, it has not addressed the issue

under the Constitution. *See Old Chief v. United States*, 519 U.S. 172 (1997).  As such, Petitioner is

not entitled to habeas relief on this issue.

**Fourth Ground for Relief: Sixth Amendment**

In his next assignment of error, Petitioner argues that he was denied effective assistance of

trial counsel when counsel failed to object to allegedly improper jury instructions and improper

argument.  Respondent contends that Petitioner's trial counsel was not ineffective.

The Supreme Court outlined the test governing claims of ineffective assistance of counsel

in *Strickland v. Washington*, 466 U.S. 668 (1984).  The benchmark for any such claim is "whether

-17-

Case No. 1:06-CV-2519
Gwin, J.

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

A claim of ineffective assistance of counsel has two components: a petitioner must show (1) that his counsel's performance was deficient; and (2) that he was prejudiced by that deficient performance. *Id.* at 687. To show deficiency, a petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. While both showings are necessary, a reviewing court need not address both components of an ineffective assistance of counsel claim if the petitioner makes an insufficient showing of one component. *Id.* at 697. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* Rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

The Court has already found that Petitioner's right to due process did not require juror

-18-

Case No. 1:06-CV-2519
Gwin, J.

unanimity about the means Crotts used when he removed or restrained the victim. *See supra, second*

*ground for relief*.  As such, his trial counsel's failure to request a more definite bill of particulars to

specify the act of restraint or removal, his failure to request the grand jury minutes be prepared to

determine which incident formed the basis of the indictment for kidnaping, and his failure to object

to the jury instructions and the prosecutions closing argument on that basis were neither deficient

performance nor prejudicial.  These arguments would have been weak or futile and counsel is not

required to make such arguments. *Biggs v. United States,* 3 Fed. Appx. 445, 448 (6th Cir. 2001)

*citing, Lucas v. O'Dea,* 179 F.3d 412, 420 (6th Cir. 1999).   Further, Petitioner cannot show

prejudice.  Had the trial court considered the issue, it would have applied *Richardson*, which allows

the jury to find an element of the crime based on alternative means. 526 U.S. at 817.

**Fifth Ground for Relief: Fourteenth Amendment**

Petitioner alleges that he was denied due process because there was insufficient evidence to

support a determination that he was a sexual predator under Ohio law.  In response, the Respondent

argues the issue is procedurally defaulted.  Petitioner first raised this claim in his brief to the Ohio

Supreme Court after the first appellate court decision.  Petitioner, however, did not file required

notice of cross appeal under Ohio Sup. Ct. Pract. R. II §2(A)(2)(a) before making this claim.  Thus,

Petitioner failed to establish the Ohio Supreme Court's jurisdiction over his claims. *See,*

*e.g., Abramovich v. Abramovich*, 86 Ohio St. 3d 1456 (table) (Aug. 20, 1999).

Crotts argues that his merits brief in support of his cross appeal adequately raised this claim

and that the Ohio Supreme Court did not deny his appeal because it had been improperly filed.  The

Ohio Supreme Court dismissed Crotts' cross-appeal without opinion.  Where the state court does

not explain its reasons for denying petitioner's claim, the Sixth Circuit applies the presumption that

Case No. 1:06-CV-2519
Gwin, J.

the court "would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996); *see also Bonilla v. Hurley*, 370 F.3d 494 (6th Cir. 2004) (finding the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling).

With regard to Ohio's rule requiring parties to specifically designate cross-appeal claims, the Ohio Supreme Court rules state "[i]f a notice of cross-appeal is filed, a memorandum in support of jurisdiction for the cross-appeal shall be filed by the deadline imposed in S. Ct. Prac. R. III, Section 4." Ohio Sup. Ct. Pract. R. II §2(A)(2)(c); *see also Abramovich v. Abramovich*, 86 Ohio St. 3d 1456 (table) (Aug. 20, 1999) (dismissing late appeal for lack of jurisdiction).  Thus, the Ohio Supreme Court's denial of Crotts' cross appeal was a procedural ruling and this is an independent and adequate state ground to prevent this Court's review of Crotts' claims.  *See, e.g., Bonilla,* 370 F.3d 494.

Crotts does not show cause and prejudice for this default nor does he demonstrate a failure to grant him relief will cause a fundamental miscarriage of justice.  For these reasons, the Court dismisses Crotts' fifth ground for relief.

**Sixth Ground for Relief: Sixth and Fourteenth Amendment**

In his sixth ground for relief, Petitioner alleges that his sentence violates *Blakely v. Washington*. Responding to this claim, the Respondent Warden argues that Crotts defaulted this ground for relief because he raised it for the first time in the Ohio Supreme Court after remand to the state appellate court.  Alternatively, the Respondent says that any error was harmless.

*A. Procedural Default*

On June 24, 2004, the Supreme Court decided *Blakely v. Washington*.  542 U.S. 296 (2004).

-20-

Case No. 1:06-CV-2519
Gwin, J.

At the time of the *Blakely* decision, the state's appeal was pending in the Ohio Supreme Court.  On December 15, 2007, the Ohio Supreme Court reversed the appellate court's decision and remanded the rest of Crotts' claims to the appellate court.  Before the court of appeals, Crotts raised his *Blakely* claim.  The Ohio appellate court rejected this claim as beyond its jurisdiction.  *See, e.g., State ex rel. Natl. Elec. Contrs. Assn., Ohio Conference v. Ohio* , 88 Ohio St.3d 577 (2000) (*Res judicata* stops consideration of issues beyond the scope of a previous remand.), *citing  State v. Gillard,* 78 Ohio St.3d 548, 549 (1997).  The Ohio appellate court noted in a footnote, however, that the court had already found Ohio's sentencing statute to be constitutional under *Blakely*.

Crotts further raised this claim in his motion for leave to appeal the Ohio appellate court's decision, which the Ohio Supreme Court dismissed as not involving any substantial constitutional question.  Crotts tried to raise the claim in his application to reopen his appeal pursuant to Rule 26(B), but the state appellate court found the claim was *res judicata*.  He also raised the claim in his appeal to the Ohio Supreme Court of the state appellate court's decision denying his application to reopen his appeal. The Ohio Supreme Court again dismissed the appeal as not involving a substantial constitutional question.

The Court presumes that "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).  Therefore, the Court presumes the Ohio courts rejected Crotts' *Blakely* claim because it was barred by *res judicata*.  To have properly raise his *Blakely* claim, Crotts should have moved to reopen the state appellate proceedings before he attempted to raise the claim in the Ohio Supreme Court.  Alternatively, he could have petitioned for state post-conviction relief immediately after the *Blakely* decision.  Given

Case No. 1:06-CV-2519
Gwin, J.

the limited remand that the Ohio Supreme Court made to the Court of Appeals, he could not have

properly raised his claims in the state appellate court remand or on appeal from that remand.

For *res judicata* to be a procedural bar in this case, it must be a firmly established state

procedural rule that applies to the petitioner's claim and the petitioner must not have complied with

the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly

established and regularly followed" cannot serve to bar federal judicial review); *Franklin*, 434 F.3d

at 418. The Court reviews to see if a state procedural rule is "firmly established and regularly

followed" as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th

Cir. 2005).

Crotts argues that the state appellate court erred in holding his *Blakely* claim barred by *res

judicata* and that the rule that *res judicata* bars earlier but improperly raised claims is not firmly

established in Ohio Courts. The Court agrees. While the Ohio rule that *res judicata* bars claims that

were raised or could have been raised on direct appeal is firmly established, *State v. Szefcyk*, 77 Ohio

St. 3d 93 (1996), that it would bar improperly raised claims that could not have been properly raised

on direct appeal is not.

The Court notes, that *State v. Perry*, Ohio's seminal decision on *res judicata*, only applied

to courts of competent jurisdiction. 10 Ohio St.2d 175, paragraph 9 of the syllabus ("Where a

judgment of conviction is rendered by a court having jurisdiction over the person of the defendant

and jurisdiction of the subject matter, such judgment is not void, and the cause of action merged

therein becomes res judicata as between the state and the defendant."); *see also State v. Wilson*, 73

Ohio St. 3d 40 (1995) (finding Wilson's post-conviction relief motion not barred because the court

did not have jurisdiction).  Respondent argues that *Perry*'s language controls the result here, in that

-22-

Case No. 1:06-CV-2519
Gwin, J.

*Perry* stated *res judicata* applied to "any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." 10 Ohio St.2d 175, paragraph 9 of the syllabus.

The Court has not found any Ohio cases where no Supreme Court precedent supported a constitutional claim at the time of the direct appeal but the constitutional claim arose while the case was pending before the Ohio Supreme Court, especially where the case was before the Ohio Supreme Court on an appeal by the state.  In *State v. Sanchez,* a case where Ohio courts did use *res judicata* to bar claims that were outside of a court's jurisdiction on the remand, the Ohio court focused on the fact that Sanchez could have argued the barred grounds in his original appeal. 4-06-31, 2007 Ohio App. LEXIS 210 (Defiance Cty. January 22, 2007).  The Court did not rely on the fact that the claim had been already raised in a way that was outside of the remand court's jurisdiction. *Id.*  As such, the Court finds this particular application of *res judicata* is not a firmly established rule and considers this argument on the merits.

*B. Merits*

When there is no state court adjudication on the merits of this claim, the Court typically reviews *de novo* questions of law and mixed questions of law and fact.  *Hargrave v. McKee*, 2007 Fed. App. 0697 (6th Cir. 2007) *citing Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).  The state court did, however, include a footnote, referring an earlier *Blakely* analysis in *State v. Lett*, 161 Ohio App. 3d 274 (Cuyahoga Cty. 2005).  *State v. Crotts*, No. 81477, 2005 Ohio App. LEXIS 3195, at *11 n.3 (Cuyahoga Cty. June 30, 2005).

In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court redefined the meaning of "statutory maximum."  "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum

-23-

Case No. 1:06-CV-2519
Gwin, J.

sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted

by the defendant.  *Id.* at 303.  The Court held that "the relevant 'statutory maximum' is not the

maximum sentence a judge may impose after finding additional facts, but the maximum he may

impose without any additional findings."  *Id.* at 303-304.

 *Blakely* applies to the instant case because it was decided while Petitioner's direct appeal was

not yet final.  *See United States v. Cottage*, 307 F.3d 494, 499 (6th Cir. 2002); *United States v.*

*Saikaly*, 424 F.3d 514, 517 (6th Cir. 2005), *citing Humphress v. United States*, 398 F.3d 855, 860-63

(6th Cir. 2005).

 Petitioner was convicted of two third-degree felonies and one second-degree felony.  At the

time Crotts was sentenced, Ohio law provided that for a second-degree felony, "the prison term shall

be two, three, four, five, six, seven, or eight years.  For a third-degree felony, the penalty is, "the

prison term shall be one, two, three, four, or five years."  O.R.C. §§ 2929.14(A)(2),(3).  But, Ohio

law also provided:

> if the court imposing a sentence upon an offender for a felony elects or is required to
> impose a prison term on the offender, the court shall impose the shortest prison term
> authorized for the offense pursuant to division (A) of this section, unless one or more of
> the following applies:  (1) The offender was serving a prison term at the time of the
> offense, or the offender previously had served a prison term.  (2) The court finds on the
> record that the shortest prison term will demean the seriousness of the offender's conduct
> or will not adequately protect the public from future crime by the offender or others.

*Id.* § 2929.14(B).  Ohio law also provides that:

> the court may require the offender to serve the prison terms consecutively if the court
> finds that the consecutive service is necessary to protect the public from future crime
> or to punish the offender and that consecutive sentences are not disproportionate to
> the seriousness of the offender's conduct and to the danger the offender poses to the
> public, and if the court also finds any of the following: (a) The offender committed
> one or more of the multiple offenses while the offender was awaiting trial or
> sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or

-24-

Case No. 1:06-CV-2519
Gwin, J.

> 2929.18 of the Revised Code, or was under post-release control for a prior offense. (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct. (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Petitioner was sentenced to concurrent sentences of 5 years for each third-degree felony to run consecutive to an 8 year term for the second-degree felony. Given that Petitioner was a first time offender (and thus, § 2919.14(B)(1) did not apply), he argues that his sentence violates the holding of *Blakely*. For the reasons set forth below, this Court agrees as to the individual sentences, but still overrules Petitioner's sixth ground for relief as it finds the *Blakely* violation to be harmless error.

O.R.C. §2929.14(B)

Given the new definition of "statutory maximum" in *Blakely*, the maximum Petitioner should have been sentenced to without additional fact finding by the jury was two years for the second-degree felony and one year for each third-degree felony, i.e. the statutory minimum.  §§ 2929.14(A)(2),(3); *see also State v. Foster*, 109 Ohio St. 3d 1 (2006)(holding section 2929.14(B) unconstitutional citing *Blakely* and *United States v. Booker*, 543 U.S. 220 (2005)).  Sentencing Petitioner beyond that period required the trial court to find facts leading to the conclusion that "the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." § 2919.14(B).  Had the trial judge imposed this sentence without making additional findings, he would have been reversed.  *State v. Edmonson*, 86 Ohio St 3d 324 (1999).  If the sentencing court did not have discretion to vary its sentence from the sentence called for by O.R.C. § 2919.14(B), *Blakely* clearly prohibits the trial

-25-

Case No. 1:06-CV-2519
Gwin, J.

court from imposing a sentence on the basis of such a factual finding.  542 U.S. at 314; *see also Foster*, 109 Ohio. St. 3d at 20 ("Since a jury verdict alone does not determine the sentence, R.C. 2929.14(B) violates *Blakely* principles").  This Court thus finds Petitioner's sentence violated *Blakely*.

<u>O.R.C. 2929.14(E)</u>

The state appellate court briefly addressed in a footnote the consecutive sentencing question under *Blakely*.  *State v. Crotts*, No. 81477, 2005 Ohio App. LEXIS 3195, at *11 n.3 (Cuyahoga Cty. June 30, 2005).  It relied on an earlier case that found that the fact findings required to impose consecutive sentences "are permissible because they do not increase a sentence beyond the maximum available to the offender. They simply aggregate individual sentences." *State v. Lett,* 161 Ohio App. 3d at 288.

Imposing a consecutive sentence under Ohio law requires additional judicial findings, without which the sentence would have been overturned. O.R.C. §2929.14(E); *State v. Comer*, 99 Ohio St.3d 463 (2003).  *Blakely*, however, stated that "[o]ther than the fact of a prior conviction, any fact that increases the *penalty* for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 542 U.S. at 301 *citing Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000) (emphasis added).  Therefore, this is an unreasonable application of clearly established law.

<u>Harmless Error</u>

This Court must next determine if this error is harmless.  "Under the harmless error test, a remand for an error at sentencing is required unless we are certain that any such error was harmless -- i.e. any such error 'did not affect the . . . court's selection of the sentence imposed.'" *United States*

-26-

Case No. 1:06-CV-2519
Gwin, J.

*v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992).

Respondent argues the error is harmless. *See Washington v. Recuenco*, 126 S. Ct. 2546, 2553 (2006) ("Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error.")

Facing a Sixth Amendment challenge similar to that made in *Blakely*, the Ohio Supreme Court chose a remedy similar to the remedy chosen by the United States Supreme Court in *United States v. Booker*, 543 U.S. 220, 226, 244 (2005).  In *State v. Foster*, 109 Ohio St. 3d 1, the Ohio Supreme Court found Ohio's mandatory sentencing provision, O.R.C. 2919.14(B), unconstitutional but severed that provision's mandatory features.  In effecting a remedy to Ohio's mandatory statutory provision, that Court explained: "To explain Ohio's "statutory maximum" for purposes of *Apprendi* and its progeny, the maximum prison term authorized by the jury verdict or the facts admitted by a defendant upon acceptance of a plea is the top of the sentencing range for the crime of which the defendant is convicted."

The Ohio Supreme Court has severed section 2919.14(B), and made the restrictions on consecutive sentences and sentences at the maximum only advisory admonitions.  With no restrictions upon higher sentences within the statutory maximum or upon consecutive sentences, Crotts could receive the same, or possibly greater, sentence upon remand.  *See Foster*, 109 Ohio. St. 3d at 29; *see also Leach v. Hudson*, No. 1:06 CV 638, 2007 U.S. Dist. LEXIS 27632, at *2 (N.D. Ohio April 13, 2007); *Shafer v. Wilson*, No. 1:06-CV-648, 2007 U.S. Dist. LEXIS 35149, at *11 (N.D. Ohio Jan. 30, 2007) (holding *Blakely* error harmless under Ohio's new sentencing scheme).

The Court does not conclude that the error is harmless.  While Petitioner may receive the

-27-

Case No. 1:06-CV-2519
Gwin, J.

same sentence or possibly a greater sentence, the Court cannot know what the state sentencing court, no longer fettered by Section 2919.14(B)'s restrictions, will choose to do in this case.  The Court agrees with the criticism of *Shafer* and *Leach* that to hold this type of error harmless "converts the concept of harmless error . . . into a doctrine of *always* harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence stops this . . . habeas court from saying for a certainty that the error is harmless." *Shahan v. Jeffries*, No. 2:06-cv-160, 2007 U.S. Dist. LEXIS 35149, 2007 WL 1432042, at *3 (S.D. Ohio May 14, 2007).  While the state sentencing court may impose the same sentence, it also may choose to impose a different one, as such the Court does not find the error harmless.

**Seventh Ground for Relief: Sixth Amendment**

Petitioner alleges his appellate counsel was ineffective for failing to present claims of error that were apparent on the face of the trial record.  Respondent argues these claims are procedurally defaulted.

A state prisoner must normally exhaust available state judicial remedies before a federal court will consider his Petition for Writ of Habeas Corpus.  28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Once the claim has been fully and fairly presented to the state courts, the exhaustion requirement is satisfied.  *Picard*, 404 U.S. at 275.

Frequently, habeas petitioners fail to comply with state procedural rules and the state courts dismiss the constitutional claims without reaching their merits.  When a petitioner has defaulted his constitutional claims in state court under a state procedural rule, federal habeas review of his claims is barred unless he can (1) demonstrate both cause for the default and actual prejudice resulting from the alleged constitutional violation, or (2) show that failure to consider his claims will lead to a

Case No. 1:06-CV-2519
Gwin, J.

fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A petitioner can establish cause for the procedural default by showing that his counsel ineffectively failed to satisfy state procedural rules necessary to preserve a constitutional claim for review.  *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007).  This is also true of appellate counsel. *Howard v. Bouchard*, 405 F.3d 459 (6th Cir. 2005).  The exhaustion requirement generally demands that "a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  *Murray v. Carrier*, 477 U.S. 478, 489 (1986).

*A. Cause*

Crotts' appellate counsel failed to file a timely notice of cross-appeal in the Ohio Supreme Court.  This barred the Ohio Supreme Court's review of some of Crotts' claims.  There can be a constitutional claim of ineffective assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment. *Coleman*, 501 U.S. at 752.  While Crotts certainly had the right to counsel in defending the appellate court's reversal, it is unclear he had the right to appellate counsel for a cross-appeal.  He would not have had that right had he appealed to the Ohio Supreme Court.  *See Coleman*, 501 U.S. 722.  Even if he did, the Court does not find prejudice in any of the foreclosed claims.

Petitioner has exhausted this claim of ineffective assistance of appellate counsel.  Crotts later filed a motion to re-open and asserted ineffective assistance of appellate counsel for failing to timely file the notice and raise the claims.  The state court applied *res judicata* to the underlying claims because the state appellate court had already denied the claims, and refused to consider the ineffective assistance of appellate counsel claims because the failure to raise these claims in the

-29-

Case No. 1:06-CV-2519
Gwin, J.

earlier adjudication prevented it from assessing prejudice as that would have involved considering

the merits of those underlying defaulted claims.

*B. Prejudice*

1. Unanimity

Petitioner asserts that his appellate counsel was ineffective for failing to timely raise his

claim that the jury instructions did not require unanimity in the Ohio Supreme Court.  The Court has

found that the jury instruction did not offend due process and did require juror unanimity as between

alternative elements of the crime.  *See supra, second ground for relief.*  As such, Petitioner cannot

show prejudice for failing to raise this claim in the Ohio Supreme Court.

2. Blakely Claim

Since the posture of counsel's failure to present his *Blakely* claim was procedurally different,

the Court addresses it *infra.*

3. Speedy Trial Claim

Petitioner asserts that his appellate counsel was ineffective for failing to raise his speedy trial

claim.  Petitioner does not assert a violation of his federal constitutional right to a speedy trial, rather

he asserts Ohio misapplied Ohio's speedy trial law.  As such, a review of this claim is not within the

province of this Court.  *Estelle*, 502 U.S. at 67.

4. Mens Rea

Petitioner asserts that his appellate counsel was ineffective for failing to raise his claim that

the trial court erred in failing to require proof of a culpable mental state.  The Court finds, *infra,*

*tenth ground for relief*, that the trial court did not err in this regard.  As such, Petitioner cannot show

prejudice.

-30-

Case No. 1:06-CV-2519
Gwin, J.

5. Jury Instructions on Petitioner's Testimony

Petitioner asserts his appellate counsel was ineffective for failing to argue that the jury was improperly instructed to consider his testimony differently than that of other witnesses and that this violated his federal due process rights.  Respondent argues that his counsel was effective.

The instruction to the jury at issue stated:

The defendant has testified as a witness in this case.  You will weigh his testimony the same as you will weigh the testimony of other witnesses.  Just because he's the defendant is not reason for you to disregard and set aside his testimony.  And you will give his testimony the weight it's entitled to receive, taking into consideration his interest in the outcome of the case and apply to his testimony the same rules you apply to the testimony of all other witnesses.

Ex. 66, 678.

It is nowhere clear that the instruction was either incorrect or violated any constitutional right, as interpreted by the Supreme Court.  *See, e.g., United States v. Abel*, 469 U.S. 45, 52 (1984) ("Bias may be induced by . . . the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."); *See also United States v. Pagan*, 196 F.3d 884, 889 (7th Cir. 1999) (noting that juries properly decide how to credit a paid informants' personal failings and motivations in considering trial testimony).  Also, the Petitioner does not argue that he was prejudiced by this error.  Even if this instruction was erroneous, the Court doubts that had the phrase been removed, the outcome would have been different.

*C. Blakely Claim*

Respondent argues that Petitioner procedurally defaulted this claim because he did not raise

-31-

Case No. 1:06-CV-2519
Gwin, J.

it as an ineffective assistance of appellate counsel.  Petitioner, however, adequately raised the issue

to the Ohio court.  Crotts cited relevant case law on the issue, and argued his counsel's failure to

raise these claims was ineffective.  Furthermore, the Ohio court's decision illustrated they

understood him to be raising the claims as ineffective assistance claims.  As such, Petitioner has

exhausted these claims.

Under Ohio Rule of Appellate Procedure 26(B)(1), claims raising the ineffective assistance

of appellate counsel can be raised for the first time in the *Murnahan* proceeding to reopen the case

following direct review.  As such, Crotts properly raised his claim.

The first *Maupin* factor requires that there was a "state procedural rule that is applicable to

the petitioner's claim and that the petitioner failed to comply with the rule." 785 F.2d at 138.  While

the Ohio court understood Crotts to have raised ineffective assistance claims, it found those claims

barred by *res judicata*, because the argument had already been raised and it did not find its

application unjust.  Journal Entry and Opinion, *State v. Crotts*, Case no. 81477 (8th Dist. App. Mar.

6, 2006), Answer, Exh. 44, p. 5.*citing State v. Murnahan*, 63 Ohio St.3d 60 (1992).  It found that

Crotts had procedurally defaulted all the claims that had been raised to the Ohio Supreme Court in

Crotts' 2005 petition.  The Ohio court did not discuss the *Blakely* claim, rather asserted that Crotts

had procedurally defaulted his claim of improper sentencing based on his petition to the Ohio

Supreme Court in 2005.  In that petition, Crotts had argued improper sentencing based on Ohio law,

and not *Blakely*, as the Supreme Court had not yet made that decision.  Thus, the state procedural

rule here states that Ohio courts will not re-open judgments where the claims have already been

raised.

As discussed above, it is unclear whether claims that are improperly raised and outside of

Case No. 1:06-CV-2519
Gwin, J.

a court's jurisdiction can bar later review. As such, the Court has found the state procedural rule was not "firmly established."

In the alternative, the Court finds the reasoning circular, and therefore, this could not be an adequate and independent state ground. *Maples v. Coyle*, 171 F.3d 408, 429 (6th Cir. 1999). The Ohio court applied *res judicata* to Crotts' claim of ineffective assistance of appellate counsel for failing to properly raise his *Blakely* claim *because his appellate counsel had raised the claim*, even though he had done so improperly, thus barring review. This circular reasoning resulted in the claim to never receiving any consideration from the Ohio courts–the courts viewed the claim as raised insofar as *res judicata* was concerned, but deemed it improperly raised for consideration on the merits.

1. Cause

Petitioner asserts his trial counsel was ineffective in improperly raising his *Blakely* claim on remand to the state appellate court, such that it foreclosed his ability to properly raise it later, in a R. 26(B) motion to re-open. Petitioner has the right to counsel in his first appeal as of right. *See, e.g., Smith v. Robbins*, 528 U.S. 259, 275-76 (2000); *Harbison v. Bell*, 408 F.3d 823, 829 (6th Cir. 2005). The remand in this case was part of Petitioner's direct appeal to the state appellate court and therefore Petitioner retained a right to counsel.

Causing Petitioner to procedurally default his *Blakely* claim by failing to raise it in a manner where it could properly addressed was not a strategic decision. Counsel raised the claim, deciding it was a meritorious claim. Counsel, however, raised it improperly, and the Ohio courts found Petitioner's claim barred when it was raised appropriately. This is deficient performance and establishes cause.

-33-

Case No. 1:06-CV-2519
Gwin, J.

As discussed *supra, ground seven, section A*, petitioner has exhausted his ineffective assistance claim.

<u>2. Prejudice</u>

This Court has found that Petitioner's sentence violates *Blakely* principles.  *See supra, sixth ground for relief.* Petitioner's counsel's failure to raise this claim in a forum where it could have had an adjudication on the merits, therefore, was deficient.  As discussed above, the state sentencing court may choose to impose the same or a different sentence.  Because the Court cannot be certain the state sentencing court will impose the same sentence, the Court finds prejudice.

**Eighth and Ninth Grounds for Relief: Sixth and Fourteenth Amendment**

In his eighth and ninth grounds for relief, Petitioner argues that he was unconstitutionally sentenced when the trial court failed to merge his conviction for gross sexual imposition with his conviction for kidnaping and that he was denied a speedy trial.  Petitioner failed to raise these claims on direct appeal to the state appellate court.  He first presented them to the Ohio Supreme Court on appeal from the state appellate court's remand.  The Ohio Supreme Court denied Petitioner's application for a discretionary appeal without opinion.  When he later tried to raise the claims on a rule 26(B) motion, the state court applied *res judicata*.

A criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *Jester*, 32 Ohio St. at 154.  The Court assumes the Ohio Supreme Court did not ignore its procedural rules and enforced the procedural bar.  *Simpson*, 94 F.3d at 203.  The Court further finds the *Jester* rule is firmly established.  Thus, Crotts has not fairly presented these claims and they are procedurally defaulted.

Crotts does not show cause or prejudice for these defaults nor does he demonstrate that

-34-

Case No. 1:06-CV-2519
Gwin, J.

failure to grant him relief will result from a fundamental miscarriage of justice.

**Tenth Ground for Relief: Fourteenth Amendment**

Petitioner argues that he was denied due process when the trial court failed to require the state to prove that Crotts had a culpable mental state before allowing him to be convicted of gross sexual imposition. Respondent denies that this was an error.

The state appellate court reviewing Crotts' application to reopen noted that the "offense of gross sexual imposition, as applied to a victim who is less than thirteen years of age, constitutes a strict liability crime which requires no proof of a precise culpable state of mind. *State v. Astley* (1987), 36 Ohio App.3d 247, 523 N.E.2d 322; *State v. York*, Sixth Appellate District Case No. WD-03-017, 2003-Ohio-7249. . . Thus, there exists no error with regard to the issue of proof of a culpable mental state vis-a-vis the offense of gross sexual imposition." *State v. Crotts*, 2006 WL 563060, at *2 (Ohio App. March 6, 2006).

Petitioner contends that the trial court erred in finding that gross sexual imposition upon a victim less than thirteen years of age is a strict liability crime, thus requiring no proof of a culpable state of mind. In essence, he argues the state court failed to follow state law.  Review of this claim is therefore not within the province of the Court.  *Estelle*, 502 U.S. at 67.  Even if it was, Petitioner cites, *State v. Moody*, 104 Ohio St. 3d 244 (2004), which holds that recklessness is the appropriate mental state for the offense of contributing to the unruliness or delinquency of a child.  In this case, Petitioner was convicted of gross sexual imposition. Thus, this argument is without merit.  For these reasons, the Court overrules Petitioner's tenth ground for relief.

**Eleventh Ground for Relief: Fourteenth Amendment**

In his last ground for relief, Petitioner asserts that he was denied due process of law when

Case No. 1:06-CV-2519
Gwin, J.

the Court required that the jury give his testimony "the weight it is entitled to receive, taking into consideration his interest in the outcome."  Respondent argues that Petitioner has procedurally defaulted this claim because he failed to present it in the state courts as a federal question.

In his application to reopen pursuant to R.26(B) and his appeal from the denial of that application, Petitioner asserted that he "was denied due process of law when his testimony was to be judged differently than other witnesses."  He did not cite any federal cases or explain how the instruction offended due process.

Fair presentment requires a petitioner to apprise the state courts that a claim is a federal claim and not merely a state law issue.  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner fairly presents a federal claim to state courts by citing relevant federal cases employing the constitutional analysis on which petitioner relies or by citing state cases employing federal constitutional analysis, or by asserting the claim in terms so particular as to raise the specific right protected by the Constitution.  *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987).  A general reference to a broad constitutional guarantee, like due process, is not fair presentment. *Gray v. J.D. Nederland*, 518 U.S. 152, 163 (1996).

Crotts failed to fairly present his claim to the state courts as a federal claim by relying on relevant federal or state cases undertaking a federal constitutional analysis or by asserting the claim with sufficient particularity.  He further does not demonstrate cause and prejudice for his default or show that a failure to grant relief will result in a fundamental miscarriage of justice.  For this reason, the Court dismisses Crotts' eleventh ground for relief.

### V. Conclusion

For the above stated reasons, the Magistrate's Report and Recommendation is hereby

Case No. 1:06-CV-2519
Gwin, J.

amended in part and overruled in part, and the Court **CONDITIONALLY GRANTS** a writ of

habeas corpus as to Petitioner's claim that his sentence violated *Blakely* and his appellate counsel

was ineffective for improperly raising his *Blakely* claim.  The Court directs the State of Ohio to

re-sentence Petitioner within ninety (90) days or release him.

      The Court certifies, pursuant to 28 U.S.C. § 1914(a)(3), that an appeal from this decision

could not be taken in good faith, except as to the *Blakely* claim and the claim of ineffective

assistance of appellate counsel in failing to properly raise that claim.  Aside from these two claims,

no basis exists upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); FED. R. APP.

P. 22(B).

      IT IS SO ORDERED.


Dated: October 24, 2007                          s/         *James S. Gwin*
                                             JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE